[Autrey v. Frieze.]

# Autrey v. Frieze.

### A Bill to Compel an Account.

1. *Equity will compel an account between tenants in common when one has received more than his share of the property.*—Equity will compel an account between tenants in common, where he has received more than his share of profits and there are complicated matters of account unadjusted between them.

2. *A union of land and stock with personal skill, and labor, and stock, and equality of expenses and profits, make a partnership.*—Parties who enter into an agreement by which one is bound to contribute land and stock for its cultivation, and the other to contribute personal skill and labor and other stock; each to furnish a specified proportion of the food for the animals, to pay equally the expenses of the plantation and to divide equally the crops, are partners and not tenants in common.

3. *Such an agreement may be afterwards modified.*—Persons entering into such an agreement may afterwards modify or rescind it; but a rescission or modification of it cannot be proven by loose declarations or conversations, especially when their subsequent conduct accords with the original contract.

APPEAL from the Chancery Court of Talladega.

Heard before the Hon. B. B. McCRAW.

William Frieze and B. P. Autrey made a contract in January, 1871, by which, for the purpose of cultivating a farm together during the year, it was agreed that Autrey should furnish the land; one mule to be used in its cultivation, and forage for the mule; and forage for a mule or horse of Frieze for its support during one-half the time it was employed in making the crop; and Autrey also undertook to pay one-half the hire of laborers necessary to till the land and gather the crop.

Frieze agreed, in consideration of these things, to supply two mules, his own labor, and to pay one-half the expenses of the other laborers engaged in the cultivation of the land and in gathering the crop. It was further agreed that all the crops were to be divided equally between the parties.

In accordance with this contract the crops of corn, oats and fodder were so divided; and of the wheat which was sown by Frieze before this agreement was made, he received two-thirds and Autrey one-third of the crop. Eighteen bales of cotton were produced on the farm. Of this number Frieze sold six bales for the sum of $525.98, and deposited $515.95 of the money with Messrs. A. G. & J. A. Storey,

[Autrey v. Frieze.]

merchants in Talladega. This sum was, by the direction of Frieze, placed, at Autrey's suggestion, to the credit of Autrey & Frieze. Subsequently each of them prohibited the Messrs. Story from paying any part of the money to the other. B. P. Autrey sold twelve bales of the cotton raised on the said land, but did not account for any part of the proceeds of the sale to Frieze.

In January, 1873, William Frieze filed a bill of complaint in the Chancery Court of Talladega, averring his full compliance with the terms of the contract, alleging only a part performance on the part of B. P. Autrey, and praying "that an account be taken of all the partnership transactions and dealings between himself and respondent Autrey, and an account of the moneys received and paid by the complainant and respondent Autrey respectively, in regard thereto; and that the respondent Autrey be decreed to pay to the complainant what, upon taking the said account, may appear to be due him; and that A. G. & J. A. Storey be required to pay into court the five hundred and fifteen 95-100 dollars, charged to be in their hands on deposit with them by the complainant and respondent Autrey and for such other further and general use as may seem meet," &c.

Autrey, in his answer to the bill, admitted some of the allegations, and denied others. He also demurred to it on the following grounds:

" 1. There is no equity in the said bill.

" 2. The complainant's remedy at law is plain, adequate and complete."

Messrs. A. G. & J. A. Story admitted the possession of five hundred and fifteen 95-100 dollars deposited with them by Messrs. Autrey & Frieze, and prayed to be relieved from the payment of interest on this sum, and also from the payment of the costs of court.

Upon the final hearing of the cause the chancellor decreed that the complainant (Frieze) was entitled to relief.

TAUL BRADFORD, for appellant.

JOHN T. HEFLIN, for appellee.

BRICKELL, C. J.—It is not material to the equity of the bill, to determine whether the relation between the parties, was that of partners in a joint undertaking in planting during the year 1871, or of tenants in common of the crops produced on the lands of the appellant. A court of equity

[Autrey v. Frieze.]

has jurisdiction to compel an account between tenants in common, when one has received a greater share of the profits than he is entitled to receive, and there are complicated matters of account between them unadjusted.—1 Story's Eq. § 466; *Lockard v. Lockard*, 16 Ala. 423; *Darden v. Cowper*, 7 Jones' Law, 210; *Leach v. Beattie*, 33 Verm. 195; *Graham v. Graham*, 6 Monroe, 562; *Wiswell v. Wilkins*, 4 Verm. 137; *Walling v. Burroughs*, 8 Ired. Eq. 61. A tenant in common of a chattel can maintain no action at law against his co-tenant unless the thing is destroyed or converted actually, or in effect,—*Allen v. Hooper*, 26 Ala. 286; *Williams v. Nolen*, 34 Ala. 167.

The case made by the bill, is (if it was conceded that the parties stand in the relation of tenants in common), that the appellant has taken exclusive possession and disposed of, for his own use, a larger share of the cotton crop than he was entitled to receive—that the proceeds of the sale of the remainder of that crop, have been by the mutual assent of the parties deposited with third persons, to await a settlement of accounts between them, and that each has claims for expenses incurred in the cultivation of the crops. The relation between the parties, the existence of mutual accounts unadjusted, presents a case lying within the original jurisdiction of a court of equity, not at all dependent on the necessity for a discovery, or any mere incidental ground of equitable interference.

But it cannot be conceded the relation between the parties was that of tenants in common. There is perhaps no question of greater difficulty, of more frequent occurrence, and more embarrassed by contrariety of judicial decision, than to determine when a contract like that we are considering creates a partnership *inter sese*, or an agency, or employment for services in the one party, or a tenancy in common of the profits or products of a common enterprise. The intention of the parties, is the true criterion in this as in all other contracts. But that intention cannot always prevail, for it may be inconsistent with the rights and obligations the contract confers and imposes. It is difficult to suppose the parties contemplated all the incidents of a commercial partnership— that of unlimited power in either partner to charge the partnership by contract within the scope of the partnership business, and the unqualified power of disposition of the partnership effects. These incidents were not in the contemplation of the parties, and when their contract is construed in the light of the circumstances surrounding them, it is certain if

their attention had been directed to them, some limitation or restraint on the power of the parties respectively would have been imposed. But while these incidents were not in the contemplation of the parties, it is certain they agreed to have a joint interest in the crops, and to share the profits and losses arising from their cultivation. There was not, and the parties did not intend there should be any property, other than the crops, jointly owned by them. This was not essential to constitute them partners. They did intend, and such is their contract, that the appellant should contribute the use of the land, and of a mule, and the appellee his personal skill and services, and the use of two mules. The forage of these mules was to be provided in particular proportions specified. Labor was to be employed and paid for and other expenses to be incurred. The laborers, and these expenses, were to be paid by them jointly, and in equal proportions. When these were paid, the crops were to be equally divided. There is manifestly a community of interest in profit and loss. Neither partner could claim any specific interest in the crops, until an adjustment and satisfaction of the wages of the laborers, and other expenses incurred in the cultivation and gathering. It was possible these wages and expenses would exceed the value of the crops—unpropitious seasons, floods, or other accidents, against which neither skill nor industry can guard, may have so reduced them in quantity, that their value would not equal, or would fall below the costs of the cultivation. If this had been true, each party was bound to contribute equally to the loss. The appellant would have lost not only the use of the land and of the personal property which was employed in its cultivation, but also one-half of the losses resulting from the excess of the expenses over the value of the crops. The appellee would have lost the one-half of such excess, his personal services, and the use of his horses or mules. Where parties have a joint interest in, and share the profits and losses arising from the use of property or skill, either separately or combined, they are partners. *Champion v. Bostwick,* 18 Wend. 183; *Emanuel v. Draughn,* 11 Ala. 306.

It was competent for the parties to rescind or to modify the original contract. The evidence does not show however a rescission or modification. It may be the appellant was not satisfied with the manner in which the appellee was conducting the cultivation of the crops, and that in response to his complaints, the appellee may have said to him that he could take the crops, and do the best he could with them.

[Cox v. Cox et al.]

But the appellee continued to labor in their cultivation, and was recognized and treated as having an interest in them until they were gathered and either divided or sold. Loose declarations of this kind are not sufficient to show a rescission or modification of a contract, when the subsequent conduct of the parties is consistent only with its continuance unaltered in any respect. Whether parties have made, or rescinded a verbal contract must often be determined not only from their declarations, but from their conduct, and their conduct is always material, when it is in interpretation of their declarations.—*Acker v. Bender*, 33 Ala. 230.

We find no error in the record, and the decree of the chancellor is affirmed.