# Couch v. Woodruff.

*Bill in Equity for Settlement of Partnership Accounts.*

1. *Partnership inter sese; when created.*—When the rights of third persons, who have dealt with parties associated in business, are concerned, a partnership may arise by mere operation of law, being implied from a community of profit and loss, even in opposition to the expressed intention of the parties themselves; but, as between the parties themselves, the question whether a partnership exists is one of intention; and when their agreement has been reduced to writing, the intention must be collected from the words of the instrument, construed in the light of the circumstances surrounding the parties when they entered into it, the occasion which gave rise to it, and the objects to be accomplished by it.

2. *Same.*—A written agreement, signed by C., H., and E., which recites that C. "is desirous of enlarging and extending his present commission business, and desires to engage the services of H. and E.", and that the parties "therefore enter into the following agreement;" and which then provides—

[Couch v. Woodruff.]

1st, "that C. is to invest a capital of $10,000 in the business," which is to be conducted at Selma, in the name of C. & Co., "and is to be allowed eight *per cent.* interest on all funds he invests in said business;" 2d, that he "is to employ the services of E., at a salary of $1,500 *per annum*, and all other help needed in said business;" 3d, that "for the influence and business qualifications of H., said C. agrees to give him the half of the net profits of said business, after all expenses are paid;" 4th, that C. is not to draw out any part of the $10,000 invested by him in the business, until the day specified for its termination, "at which time he is to pay said H. his half of the net profits of said business, if any;" 5th, that each of the three parties agrees to give his whole time and attention to the business, H. further agreeing to pay half of all the losses the business may sustain, if any,—creates a partnership between C. and H., as between themselves.

3. *Stating account on settlement of partnership.*—When the articles of partnership bind each partner to devote his whole time and attention to the common business, and, on settlement of the partnership accounts in equity, one of the partners is charged with a sum of money which he agreed to pay for the privilege of undertaking an agency for a third person outside of the partnership business, the amount so charged should be credited to the partnership, and not to the other partner individually.

4. *Parol evidence ; when not admissible to vary writing.*—A writing which is complete in itself, and which was executed with deliberation, is the sole memorial of the contract between the parties, and all prior negotiations are presumed to have been merged in it; and in the absence of fraud, or mistake, its terms can not be varied by parol evidence.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 6th August, 1875, by Noadiah Woodruff, as the assignee of Oscar F. Harrell, against Wilson H. Couch and the said Harrell, to compel a settlement of the accounts of a partnership alleged to have existed between the said Couch and Harrell. The articles of agreement between the said parties, as made an exhibit to the bill, and the assignment by Harrell to the complainant, were in these words :

"State of Alabama, County of Dallas, City of Selma, December 29th, 1870. Know all men by these presents, that whereas W. H. Couch is desirous of enlarging and extending his present commission business, and desires to engage the services of O. F. Harrell and W. M. Ethridge ; we, the undersigned, this day enter into the following agreement, until the first of January, 1872 : 1. Said Couch is to invest a capital of $10,000 in said business, and conduct it in Selma, in the name of W. H. Couch & Co.; and he is to be allowed eight per cent. interest on all funds he invests in said business. 2. He is to employ the services of W. M. Ethridge, at a salary of $1,500 a year, and all other help needed in said business. 3. For the influence and business qualifications of said O. F. Harrell, said Couch agrees to give him the half of the net profits of said business, after all expenses are paid. 4. Said Couch is not to draw out any of said capital of $10,000, until January 1st, 1872 ; at which time, he is to pay said

[Couch v. Woodruff.]

Harrell his half of the net profits of said business, if any.
5. Said Couch, Harrell and Ethridge agree to give their
whole time and attention to the promotion of the interest of
the above named business." (Signed by W. H. Couch, O. F.
Harrell, and W. M. Ethridge, and attested by Robert A.
Nicoll.)

"Selma, Ala., Dec. 29th, 1870. This is to certify, that
whereas W. H. Couch has this day engaged my services in
the commission business, until the first of January, 1872, for
the half of the net profits of the said business, I hereby
agree that, if said business sustains a loss in conducting it,
I am to pay the half of said loss." (Signed by O. F. Harrell,
and attested by W. M. Ethridge.)

"For value received, I transfer the within agreement, and
all my rights and equities therein, and all moneys due me
in virtue thereof, to Noadiah Woodruff, this 10th December,
1874." (Signed by O. F. Harrell.)

The bill alleged that the business of the partnership was
carried on until on or about the 1st January, 1872, when the
partnership expired by limitation; that its net profits
amounted to about $6,000; that Couch withdrew from the
partnership, in violation of the articles of agreement, more
than one half of the amount which he had put in; that he
had possession of the partnership books and accounts, and
refused to let Harrell and the complainant have access to
them, and denied his liability to account.

A decree *pro confesso* was taken against Harrell. Couch
answered the bill, admitting the execution of the articles of
agreement, but denying that they created a partnership be-
tween him and Harrell. He denied that the business was
conducted successfully, or had earned any profits above ex-
penses. He alleged that Harrell had not devoted his whole
time and attention to the business, and that, in May, 1871,
he had undertaken a general agency for Mrs. M. M. Craig,
in the management of a large plantation, and in the pur-
chase and sale of valuable lands; that this business required
a great deal of his time and attention, and he expected to
reap great profit from it; and that, in order to procure re-
spondent's consent to his undertaking this agency, Harrell
promised to pay him $1,000 out of his share of the profits of
their common business. He alleged that the agreement be-
tween himself and Harrell originated in Harrell's applica-
tion to him for employment; that Harrell proposed, as an
inducement to his employment by respondent in said busi-
ness, that he would put in the business $3,000, or $3,500, and
would "turn over" fifteen hundred bales of cotton, to be
sold on commission by respondent's house; that when the

[Couch v. Woodruff.]

agreement was reduced to writing, he objected to incorpor-
ating these stipulations, through fear of his creditors, and
therefore they were omitted; that the words " & Co." were
inserted in the name of the house, at the instance of Har-
rell, in order to induce his former customers to believe that
he was a partner; and that Harrell never complied with his
promises, as to the money and cotton, though often requested
to do so.

The complainant took the deposition of Harrell, and the
defendant Couch took the depositions of W. M. Ethridge
and himself; and the cause was submitted for hearing on
bill and exhibits, answer, and these depositions. The chan-
cellor held, that the agreement created a partnership between
Couch and Harrell, and that the complainant was entitled to
an account of the partnership transactions; and he there-
fore ordered a reference to the register, as master, " to take
and state an account of said partnership transactions be-
tween said parties, under the contract of partnership, as
shown by the instrument of writing attached to the bill as
an exhibit, as modified by the subsequent agreement between
the parties, shown in the testimony of Couch and Ethridge,
to the effect that said Harrell should take charge of the bus-
iness of Mrs. Craig, and pay to the firm, for his time thus
employed, the sum of one thousand dollars."

On the hearing, the chancellor suppressed, on objections
by the complainant, several portions of the depositions of
Couch and Ethridge, in which they detailed, as in the
amended answer of Couch, the negotiations between the par-
ties before their agreement was reduced to writing, and the
reasons why the stipulations on the part of Harrell were not
inserted in the writing. In reference to the agreement be-
tween the parties about Mrs. Craig's business, Ethridge tes-
tified: " The original agreement between them was changed
in May, 1871. Mrs. M. M. Craig wished Harrell to take a
power of attorney, or agency for her, in the management of
her farm and finances. As this would require a good deal of
his time from the business of said Couch, Harrell asked his
permission to take said agency. Upon Harrell's insisting
for the privilege, Couch agreed that, if Harrell would pay
him $1,000, he might act for Mrs. Craig. Harrell then
offered to pay him $500, but Couch refused. Harrell then
asked for time to go out and see Mrs. Craig; and on his re-
turn he agreed to pay Couch the $1,000, for the time lost in,
and the privilege of attending to Mrs. Craig's business; say-
ing, ' he could pay that, and then have a good thing of it.' "
The testimony of Couch, in reference to this matter, was
substantially the same as that of Ethridge.

[Couch v. Woodruff.]

In the account stated by the register, he charged Harrell, in favor of the partnership, with $1,000, as directed in the decree of reference ; and the accounts, as stated by him, showed a balance due to Harrell, from Couch, of $514.17 ; but, on exceptions to his report, this balance was reduced by the chancellor to $461.12; and he rendered a decree for the complainant for that amount. The defendant excepted to that part of the report which charged the item of $1,000, due from Harrell, in favor of the firm, and insisted that it should have been allowed to Couch individually; but the chancellor overruled the exception, and adhered to his former decision.

The several rulings of the chancellor in suppressing evidence, the decree of reference, in holding that a partnership existed between the parties, the overruling of the exceptions to the register's report, and the final decree, are now assigned as error.

REID & MAY, and E. M. VARY, for appellant.—1. The contract between Couch and Harrell did not create a partnership.—*Autrey v. Frieze*, 59 Ala. 587 ; *Robinson v. Greene*, 5 Harr. Del. 115 ; *Chisholm v. Cowles*, 42 Ala. 180 ; *Hazard v. Hazard*, 1 Story, 371; Parsons on Partnership, 58, note *d; Bailey v. Clark*, 6 Mass. 374 ; *Ellsworth v. Pomeroy*, 26 Indiana, 163 ; *Kerr v. Potter*, 6 Gill, Md. 424 ; *Emanuel v. Draughn*, 14 Ala. 303 ; *Belden v. Reed*, 27 La. Ann. 103 ; Southern Law Journal, May, 1878, p. 236. The testimony shows, very clearly, that the parties never intended to form a partnership, and never supposed that they had done so ; and as the question is presented, it is wholly one of intention.

2. Aside from the question of partnership, the evidence establishes an express agreement by Harrell to pay Couch individually $1,000, for the privilege of attending to Mrs. Craig's business, from which he expected to derive a greater profit to himself. As to this matter, the testimony of Ethridge and Couch is substantially the same, and outweighs the denial of Harrell. It was a private agreement between the parties, and the alleged partnership had no connection with it.

3. The evidence suppressed by the chancellor does not come within the general rule, which excludes parol evidence of stipulations not embodied in the writing, but is within recognized exceptions, as shown by the following authorities : 1 Greenl. Ev., 14th ed., § 284 ; 1 Brickell's Digest, 865, § 866 ; 85 Penn. St. 369 ; 2 Wharton on Evidence, § 1015 ; *Witte v. Dixon*, in Law Reporter for April 17, 1878, p. 466.

LAPSLEY & NELSON, *contra*.　(No brief on file.)

BRICKELL, C. J.—The primary question is, whether, by the agreement of December 29th, 1870, into which Couch and Harrell entered, a partnership between them was created. If there was, a court of equity alone had jurisdiction to decree an account and settlement of the partnership transactions. If there was not, the bill ought to have been dismissed, and the error of entertaining it is fatal to all the proceedings.

In determining whether a partnership was created, we are to consider alone the intention of the parties, as it may be fairly collected from the agreement, and the circumstances attending its execution.—Pars. Part. 58. There is a well-recognized distinction, between cases where third persons are concerned, who have dealt with parties associated in business, and cases where controversies arise between the parties themselves. In the former class of cases, for the protection of strangers, a partnership may arise by mere operation of law, without an inquiry into, or in direct opposition to, the expressed intention of the parties. The general course of decision, founded on the principles laid down in *Waugh v. Carver*, 2 H. Bla. 235 (1 Smith's Lead. Cases, 968), is, that whenever two or more persons agree to combine or unite capital, skill, or labor, for the purpose of trade or business, for their common benefit, and that the proceeds shall be received on their joint account, and distributed among them, as to third persons they will be regarded as partners, although such may not be their intention. There is community of loss, and of profit, and the law implies the existence of a partnership.—Pars. Part. 70-93. In the latter class of cases, the question, as we have said, is one of intention; and when the agreement between the parties is in writing, the intention must be collected from its words, and the circumstances which may be resorted to for aid in its construction—the circumstances surrounding the parties, the occasion giving rise to the contract, and the object to be accomplished.—*Pollard v. Maddox*, 28 Ala. 321.

Couch was entering into a business new to him, in which Harrell had been previously engaged, and had experience, and an acquaintance with the class of the immediate community from whom customers and patrons were expected. The enlargement and extension of the business is the purpose of Couch, explicitly avowed in the first clause of the agreement. The means and methods to be employed are—first, that Couch shall invest a capital of ten thousand dollars, and conduct the business in the name of W. H. Couch

& Co., being allowed eight per cent. interest on his capital. He is prohibited from drawing out any part of this capital, during the continuance of the business relations, which were limited to January 1st, 1872. He is to employ Ethridge, at a salary of fifteen hundred dollars, and such other help as may be needed. The duty of Harrell is to give his whole time and attention to the business; and therefor, and because of his influence and business qualifications, Couch agrees to give him one-half the net profits, and he is to bear one-half the losses, if any are sustained.

Whether a person associated with another in trade or business, receiving a share of the profits as compensation for his labor and skill, is, as *between the parties themselves*, to be esteemed a partner, or only a servant or agent, is a question often of unmixed difficulty. The difficulty lies, not in ascertaining the principle by which the question may be determined, but in its application to the varying facts of the particular cases. It may be safely asserted, as the result of the authorities, it seems to us, that where there is a communion of profit and loss—when the party is not only entitled to share in the profits, but must bear the losses, whereby he may not only be excluded from all compensation, but involved in liability he can be compelled to discharge from his individual, separate property; when it is plain that he looked beyond the personal responsibility of his associate, to an interest or lien upon the resulting property, or proceeds—a right beyond that of an ordinary creditor, which would survive the death or bankruptcy of his associate; a mere agency, or employment as a servant, is excluded, and, as between themselves, the parties are partners.—*Emanuel v. Draughn*, 14 Ala. 303; *Moore v. Smith*, 19 Ala. 774; *Meaher v. Cox*, 37 Ala. 201; *Scott v. Campbell*, 30 Ala. 728; 1 Smith's Lead. Cases, 985. Applying this test to the agreement of these parties, when it is read in the light of the circumstances, and construed according to its obvious meaning, we think a mere agency, mere employment on the part of Harrell, is excluded, and that, as between themselves, he and Couch were partners.

3. We are unwilling to dissent from the conclusion of the chancellor, that, if Harrell is to be charged with the one thousand dollars Mrs. Craig had contracted to pay him, the partnership, not Couch individually and separately, should be credited with it. In the superintendence of the business of Mrs. Craig, it was from the business of the partnership the time and attention of Harrell was withdrawn; the loss, if any was sustained, was sustained by the partnership; and for it compensation was due only to the partnership.

[Struve v. Childs.]

4. There was no error in excluding such parts of the evidence of Couch and Etheridge, as sought to engraft on the written agreement, by parol, independent stipulations on the part of Harrell, increasing his duty and obligation. In the absence of fraud, or mistake, a writing in itself complete, and which has been executed with deliberation, cannot be varied or altered by oral evidence. It is presumed to contain the sole memorial of the contract of the parties : in it all prior negotiations or stipulations are merged; and when these are intentionally omitted, it cannot be said by either party subsequently that they were not waived.

We find no error in the record, to the injury of the appellant, and the decree must be affirmed.