# Tayloe, Adm'r, *v.* Bush.

*Settlement of Decedent's Estate in Probate Court.*

1. *Partial settlement of administration upon decedent's estate; presumption of correctness.*—The presumption of correctness attaching, under the statute, to a partial settlement of an administration upon a decedent's estate, prevails only as to matters of fact, and not to pure questions of law, which are open and subject to contestation upon the final settle-

[Tayloe, Adm'r, v. Bush.]

ment, the parties in interest not having appeared and litigated either questions of law or of fact.

2. *Partnership; whether created, how determined.*—In determining whether a partnership exists, as between the parties themselves, or in controversies not involving the rights of third parties who have dealt with them as partners, the intention of the parties is the single question for consideration; and when the contract is in writing, the intention must be collected from its words, aided, if there be ambiguity in its terms, by resort to the circumstances under which it was made, the relative situation of the parties, the occasion giving rise to the contract, and the objects and purposes to be accomplished.

3. *Same; test of, and exception thereto.*—While the test of a partnership generally is, whether there is a community of interests, a participation in losses and profits, this test does not apply, when a party, without interest in the capital or business, is merely to be compensated for his services from the profits resulting from a common adventure or enterprise. In such case, the relation of the parties is that of tenants in common in the results of the joint adventure or enterprise, and not that of partners.

4. *Cultivation by administrator of crops planted by intestate; credit for expenditures.*—Where an intestate, at the time of his death, had planted, and was engaged in cultivating crops, it is the duty of the administrator, under the statute, to continue the cultivation of the crops, and to gather and prepare them for market; and for his just and reasonable expenditures in the performance of this duty, he is entitled to credit on settlement (the want of good faith, of prudence, or of diligence, not being imputable to him), although, on account of natural causes, destructive of crops in that section, such expenditures largely exceed the proceeds of the sales of the crops.

5. *Admission of secondary evidence; when error without injury.* Where, on a final settlement of an administration upon a decedent's estate, there is an entire want of evidence to repel the presumption of correctness, in point of fact, of any item embraced in a previous partial settlement, no item embraced in such partial settlement, and protected by such presumption, is re-examinable; and hence, the admission of secondary evidence, in such case, without a proper predicate therefor, of a written contract, in support of an item of credit, allowed on the partial settlement, is error without injury, the evidence being merely redundant and superfluous.

APPEAL from Marengo Probate Court.

Tried before Hon. JAS. W. TAYLOR.

In the matter of the final settlement of the administration of John W. Bush upon the estate of W. K. Paulling, deceased.

As shown by the record, "W. K. Paulling was living on a large plantation in Marengo county during the early part of the year 1876, and at the time owned a large amount of real and personal property in said county, but had no hands or supplies to run the place with." It was further proved that his real estate was involved in litigation; that such litigation ended adversely to his interests, and that it so ending caused the report of insolvency hereinafter referred to. It was also proved that, in this state of his affairs, said Paulling entered into the following contract with one B. R. Thomas:

28

[Tayloe, Adm'r, v. Bush.]

" BONNIE CLOVER, MARENGO COUNTY, March 13, 1876.

" The following is a contract by and between Wm. K. Paul-
ling, of the first part, and B. R. Thomas, of the second part,
witnesseth : That the party of the first part agrees and binds
himself, his heirs and assigns, to divide equally with the party
of the second part all the crops and proceeds of his plantation,
and lands of every description, as well as the increase of all
stock now on said plantation for the year 1876, and for each
succeeding year, until the year 1886, including the tenth year.
The party of the [first] part further agrees to furnish the party
of the second part all the stock, tools and provisions now on
hand, free of charge, and the lands free of rent or charge. It
is further agreed by the party of the first part, that the party
of the second part shall have and hold possession of the dwell-
ing house, appurtenances and other premises on said plantation
and lands, and shall have undisturbed possession and control of
said premises for the term of ten years. The party of the
second part, for himself, his heirs and assigns, agrees to take
charge of the plantation and premises, stock, implements and
tools of the party of the first part, and manage and conduct
the farm in a farmer-like manner, and attend to the business of
the party of the first part in a business-like manner, according
to the terms of this contract, as a skillful manager; and to keep
correct accounts of all expenses incurred in the management of
said farm and business, and to make equal division of the net
proceeds of said farm annually with the party of the first part.
The party of the second part further agrees to treat the party
of the first part in a respectful manner, and to minister to his
personal comfort and wants in a becoming manner. In witness
whereof," etc.

The said Paulling died on 7th April, 1876. Prior to his
death, but after the execution of the foregoing contract, said
Thomas " pitched " a crop of corn and cotton on said planta-
tion. The said Bush was appointed administrator on 26th
May, 1876. At the time of his appointment, the real and per-
sonal property of said decedent was in the possession of said
Thomas, who held under said contract, and refused to deliver
it up. Said Bush " continued, during the year, 1876, the
planting operations which had been begun before the death of
said Paulling, and, in and about the same, he expended all the
items on the credit side of the account filed by him on 10th
December, 1878, for a partial settlement of his administration
of said estate. At the time of his appointment, the prospect
for a crop on said place was very fine, as it was at the time on
all adjoining places ; but, in common with those on other places,
the crop suffered very heavily from the almost total blight,
from which the country suffered so greatly in the summer of

[Tayloe, Adm'r, v. Bush.]

that year." As a result of this blight, only nineteen bales of cotton were made on the place, which netted $749.57, which was all that was realized from the crop of that year on said place. In cultivating the place that year, he expended about $2000. On 2d March, 1878, he made a partial settlement of his administration, on which he charged himself with the proceeds of said crop, and received credit for amounts paid out by him in cultivating said place. On 8th November, 1880, the estate was declared insolvent, on the report of the administrator; and afterwards W. H. Tayloe was appointed administrator of the insolvent estate.

On this settlement, the appellant " moved the court, by his separate motion as to each particular item, to strike from the credit side of the account of said Bush, as such administrator, on his said partial settlement, and now to charge him, in his final settlement, with each and every one of such items and amounts of credit, except those for burial expenses and taxes, paid by said Bush, as such administrator as aforesaid, for and on account of said decedent and his said estate." These motions the court overruled, and the appellant duly excepted.

The witnesses, Noel and Hezekiah, referred to in the opinion, were laborers whom the decedent, by written contract with them, hired on said place during the year of his death; and the administrator, on his partial settlement, obtained credits for amounts paid to them for services rendered under said contract.

The admission of their evidence, and the rulings on the motions above noted are here assigned as error.

W. H. TAYLOE, for appellant.

J. T. JONES, contra.

BRICKELL, C. J.—An executor or administrator is not only authorized, but is required to make partial or annual settlements of his administration.—Code of 1876, § 2508. When such settlement is made in the mode prescribed by statute, it is not upon the final settlement conclusive, but every item of account included in it may be re-examined. The statute, however, attaches to it the presumption of correctness, and the " laboring oar" is upon the party impeaching and proposing to re-examine it.—Code of 1876, §§ 2531–32 ; Holman v. Sims, 39 Ala. 709 ; Jones v. Jones, 42 Ala. 218. The errors supposed to lie in the partial settlement made by the appellee as administrator in chief (the settlement having been made in strict conformity to the statute), depend mainly upon the construction of the written agreement made between the intestate

[Tayloe, Adm'r, v. Bush.]

and Thomas. This is a pure question of law, which may well be regarded as open and subject to contestation upon the final settlement, the presumption of correctness attaching to the partial settlement prevailing only as to matters of fact, the parties in interest not having appeared and litigated either questions of law or of fact.—*Duke v. Duke*, 26 Ala. 673.

After a careful examination of the agreement, though it is very inartificially drawn, and there is a want of precision and accuracy in its expression of the relations and rights of the parties, we are of opinion that it was not their intention to create a partnership, but rather a tenancy in common of the products of cultivation of the plantation of the intestate, of which Thomas was entitled to possession and control, and, for his services and skill in its management, was entitled to one half of the net profits. In determining whether a partnership was created, the intention of the parties is the single question for consideration. There is a well recognized distinction between cases where third persons have dealt with parties associated in business as partners, and controversies between the parties themselves, or controversies in which the rights of such persons are not involved. In the one class of cases, a partnership may arise by mere operation of law, without an inquiry into, or in direct opposition to the expressed intention of the parties. In the other class of cases, the question is as to the intention of the parties, and when the agreement or contract is in writing, the intention must be collected from its words ; and if there is ambiguity in its terms, to aid in its construction, resort must be had to the circumstances under which it was made, the relative situation of the parties, the occasion giving rise to the contract, and the objects and purposes to be accomplished. *Emanuel v. Draughn*, 14 Ala. 303 ; *Couch v. Woodruff*, 63 Ala. 466 ; *Autrey v. Frieze*, 59 Ala. 587. The test of a partnership generally, whether the controversy is between the parties, or *quoad* third persons, is, whether there is a community of interests, a participation in losses and profits.—*Howze v. Patterson*, 53 Ala. 205 ; *Autrey v. Frieze, supra.* The rule is not without its exceptions ; and when a party is without interest in the capital or business, and is to be compensated for his services from the profits, or rewarded by the profits, or what is to depend upon the result of a common adventure or enterprise, the rule is without application.—*Richardson v. Hughitt*, 76 N. Y. 55 (32 Am. Rep.) 267 ; *Emanuel v. Draughn, supra* ; *Couch v. Woodruff, supra.* This contract is within the exception ; the participation of Thomas in the profits was simply intended as compensation to him for his skill and services as the manager of the stock and plantation, and in the cultivation and gathering of the crops.

[Tayloe, Adm'r, v. Bush.]

The parties standing in this relation, crops having been planted and in the course of cultivation at the death of the intestate, it was the duty of Bush, as administrator in chief, prescribed and imposed by the statute, to continue the cultivation, to gather and prepare them for market, and to make sale of them.—Code of 1876, §§ 2439–41; *Loeb v. Richardson*, 74 Ala. 311. The law casting upon him this duty, the just and reasonable expenditures, to which he was compelled in the performance of the duty, must, of consequence, be reimbursed to him from the estate in his hands for administration. True, these expenditures seem to have exceeded largely the proceeds of the sales of the crops. But there was no want of good faith, or of prudence, or of diligence imputable to him. The unfortunate and unprofitable result was attributable to natural causes, destructive of other crops in the same section, against which, however, foresight and judgment could not guard. A personal representative, keeping within the line of duty and authority, exercising reasonable care and diligence, is not an insurer of events or of results; he is a guarantor only of his own fidelity. *Gould v. Hays*, 19 Ala. 438.

There was an entire want of evidence to repel the presumption of correctness, in point of fact, of any item embraced in the partial settlement, and in that event it was not re-examinable. It stood protected and unimpeached by the presumption which the statute attaches to it. The items for payments made to or for the witnesses Noel and Hezekiah were within the presumption. It must be conceded that their evidence as to the contract in writing between them and the intestate was secondary, and inadmissible to support the credits, if there had been evidence authorizing a re-examination of them. But as the case is presented by the bill of exceptions, the evidence was merely redundant and superfluous; without it, the probate court was bound to the allowance of the credits, or rather to suffer the partial settlement to stand as correct. The admission of evidence, which is merely redundant and superfluous, is not an error available to reverse a judgment; for the plain reason that it is incapable of working injury.—*Fant v. Cathcart*, 8 Ala. 725; *Bishop v. Blair*, 36 Ala. 85; *Jemison v. Dearing*, 41 Ala. 283. There is no error in the record prejudicial to the appellant, and the decree of the court of probate must be affirmed.