# Reeves, *et al.* v. Jordan.

## Bill for an Accounting, and to Settle Partnership.

(Decided April 13, 1916.  Rehearing denied June 30, 1916.
72 South. 322.)

1. **Partnership; Purchase of Interest; Condition Precedent.**—The general rule is that terms in an agreement for the purchase of a share in a partnership business will not be treated as conditions precedent to the acquisition by the purchaser of an interest, unless expressly so stated, or unless they are of a nature to raise the presumption that they are such.

2. **Same; Waiver.**—Where, while acting for partners, complainant acquired the interest of other partners for his immediate principal, took charge of the business and managed it successfully under an agreement that he should buy a third interest for $2,000, by giving a note for that amount, the execution of the papers being merely delayed from time to time, but not treated as of serious moment by any of the parties, no demand being made on the complainant to execute the papers, but the others treating him as a partner, and encouraging him to regard himself as such, the stipulations of the contract touching the execution of the note, etc., were waived, as conditions precedent to the acquisition of an interest on the part of complainant, who acquired an interest in the business, because of the dealings with the other partners.

3. **Evidence; Opinion; Partnership.**—In a bill to establish complainant's interest in the partnership, the court will consider only the legal evidence, not taking into account the opinion of witnesses who testified only to their general understanding or opinion concerning the partnership.

4. **Same; Parol; Contract of Sale.**—In construing the contract between complainant and respondent, the bill being to establish complainant's interest in the partnership, the court will treat as competent evidence going to show the circumstances surrounding the parties at the time, and on the occasion giving rise to the transaction, and will consider the object to be accomplished by the agreement.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by G. T. Jordan against L. Reeves and others, to establish a partnership, and for an accounting.  From a decree for complainant respondents appeal.  Affirmed.

The agreement referred to in the opinion is as follows:

The ownership of the Citronelle Nurservy & Orchard Company on this date being held by L. Stevens and R. L. Scott in respective proportions, L. Reeves 9/12 and R. L. Scott 3/12 interest, and said ownership assuming a certain obligation against property of Citronelle Nursery & Orchard Company represented by mortgage of one thousand ($1,000.00) dollars held

by Mrs. Reeves, and the ownership of land on which the principal stock of said company is located being possessed by L. Reeves and being a certain 60 acres known as the old Byrd place: Witnesseth this agreement on this date between L. Reeves, R. L. Scott, and G. T. Jordan:

L. Reeves agrees to sell and G. T. Jordan agrees to buy a 1/3 interest in said company for a consideration of $2,000.00, L. Reeves agreeing to take an interest-bearing note of above amount from G. T. Jordan and giving in return a contract to deliver and convey ownership of 1/3 interest in company upon payment of said note and interest.

L. Reeves agrees to sell and R. L. Scott agrees to buy a 1/12 interest in sair company for a consideration of $500.00, and for a further consideration of a certain amount to be determined by an adjustment of personal accounts now existing between said Reeves and Scott; L. Reeves, agreeing to take from Scott an interest-bearing note for such amount as determined by personal accounts and including above-mentioned $500.00 and give in return a contract to deliver and convey ownership to R. L. Scott upon payment of note and interest and as further security to L. Reeves, R. L. Scott agrees to give him a chatted mortgage on his present ownership of 3/12 interest.

It is mutually agreed that ½ of the net proceeds from the sale of nursery stock or of other profit accruing to said nursery company shall be applied to the payment of above-mentioned mortgage held by Mrs. Reeves. Further, L. Reeves agrees to lease to the nursery company for a term of years the 60 acres above mentioned, which lease shall include a contract on the part of L. Reeves to convey and give title to land to Citronelle Nursery & Orchard Company upon payment of a certain price now determined upon, namely, $4,000.00 with interest, to such date of conveyance. The interest to be paid annually, and accepted by L. Reeves as the consideration and payment in full for rental of land; and L. Reeves further agrees to place to the Citronelle Nursery & Orchard Company the right at any time to sell the said land, providing that in such sale he be paid the price above mentioned, with interest to date of sale, except the same amount as payment in full for land.

[Signed]  L. Reeves.<br>
R. L. Scott.<br>
G. T. Jordan.

3—197

[Reeves, et al. v. Jordan.]

GORDON & EDINGTON, for appellant.   SULLIVAN & STALL-
WORTH, for appellee.

GARDNER, J.—Appellee files this bill against appellants,
seeking a partnership settlement and accounting.   In the answer
it was denied that the complainant had any interest in the part-
nership.   The issue was determined by the court below in favor
of the complainant; hence this appeal.

The following facts we consider as well established by the
record, some of which are without dispute:   Appellants, L.
Reeves and R. L. Scott, were engaged, prior to August 1, 1913,
in conducting a nursery business under the name of the "Citron-
elle Nursery & Orchard Company."   The parties designated in
the record as the Draimes brothers held a one-third interest in
the business, and Reeves and Scott are shown to have been
anxious to have them eliminated.   The business was very unsat-
isfactory, and these parties were objectionable to Reeves and
Scott.   Reeves testified that he had intended placing the matter
in the chancery court when they conceived the idea of buying out
the interest of the Draimes.   They thought it necessary to keep
the Draimes brothers in ignorance of this purpose, so they pro-
cured one Cowan to act as the ostensible purchaser, and they
requested appellee, G. T. Jordan, to act as agent of Cowan in
putting through the sale and in negotiating with the Draimes
brothers.   Inventory of stock was taken by Jordan, and a valua-
tion of $6,000 was agreed on with the Draimes brothers, and
they conveyed their interest to Cowan for $2,000.   Cowan imme-
diately transferred the interest thus acquired to Reeves.   In nego-
tiating with Jordan in regard to this particular service nothing
was agreed as to his compensation, but he was offered a one-third
interest in the business, and was, in fact, invited to become a
partner with Reeves and Scott.   Jordan at first declined, stating
that he did not have the money on hand at the time.   Reeves
testified that he told Jordan he would not hurry him, and Jordan
finally agreed to come into the partnership and drew up the
agreement, which is made Exhibit A to the bill, and which will
be embodied in the report of the case.   Jordan was given the
management of the business, and conducted it successfully from
that day, August 1, 1913, till he was ousted from the affairs of
the concern on or about April 1, 1914.   It is insisted by Jordan
that it was agreed among them that for a while his interest

should not be made public, because of the ostensible purchase by Cowan. Jordan was to draw a salary as manager, but agreed to draw no money before January 1st, after which date each of them was to draw a salary of $50 a month. Previous to this time Scott had been paid for his services, but at no fixed salary. Jordan had tendered no note to Reeves until after Reeves had terminated his (Jordan's) connection with the company; nor had Jordan paid any part of the $2,000 for the one-third interest he was to secure from Reeves. It is quite apparent that Scott is interested only incidentally in the result of the suit, and that he is merely looking after his own interests.

Reeves insists that the execution of the note by Jordan was a condition precedent to the latter's admission to the partnership, and that, not having tendered same before his connection with the company was severed, he therefore had acquired no interest. The agreement does not specify any particular time in which the note was to be executed, nor as to its date of payment. It does stipulate that "Reeves agrees to sell a one-third interest and that Jordan agrees to buy said interest" in the company for a consideration of $2,000. The failure to tender the note for this sum within a reasonable time seems to be the fact upon which appellant Reeves and his counsel lay great stress. Testifying in regard to a conversation Jordan had with him after receiving his letter of dismissal, Reeves said: "And he said, 'Do you mean to ignore my interest?' I said, 'You never acquired any interest.' He said, 'How about my contract?' I said he was to deliver the note. He said he considered his contract binding. I said I did not; that that was where we differed."

Other evidence in the case, indeed that of Reeves himself, convinces us that the question, when the money should be paid was treated as a matter not of vital importance by Reeves; and the above-quoted testimony, as well as this entire record, leads to the conclusion that the failure to tender the note is, after all, the gist of the controversy and the essence of Reeves' defense in this case.

(1) It may be conceded, for the purpose of this case, that the wording of the agreement, standing alone, might be construed as providing that tender of the note and payment thereof should be conditions precedent to the acquiring of an interest by Jordan. However, the general rule seems to be that such terms will not be treated as conditions precedent unless it is so expressly stated, or

unless they are of a nature to raise the presumption that they are such.—Bates on Partnership, vol. 1, § 84; *Saunders v. McDonough,* 191 Ala. 119, 67 South. 591. In this case the complainant insists that the execution of the note was waived by the parties, and that it was mutually agreed that the mater drift along until the end of the season, when, possibly, profits realized from the business might practically liquidate the indebtedness.

(2) We think the record shows that appellant Reeves did not consider the execution of the note a matter of any material moment. It appears, and we think it well established by the evidence, that the complainant was all along treated by the appellants as a partner having an equal interest in the business. He was consulted about all matters pertaining to the business or concerning its advancement, and he seems to have had control, to a large extent, of the business of the company. Appellants insists, however, that all of this was consistent with his duties as manager. Indeed, but for this, the question would be one of easy solution. We think, however, that the evidence in the record sufficiently corroborates the theory of the complainant that he was in fact treated and considered as an active partner in the business. That he was so recognized by Scott is quite clear, as he admits in his testimony that he introduced the complainant as a "partner in the business." Appellant Reeves denied that he ever introduced Jordan as such, but admits that he may have "told one or two that he had a chance to get an interest in the business." The witness Hand testifies that: "Scott, Jordan, and Reeves, each and every one, gave me to understand that they were equally interested in the business."

The witness Cotting states that either Jordan or Reeves—he could not recall which, but that both were together at the time—informed him that complainant had been taken into the partnership. The witness said: "The substance of it was that now that the Draimes' interest had been acquired, Mr. Jordan had come into the business as an equal partner with Reeves and Scott."

The witness Pick testified that Reeves told him that "Jordan was now connected with them in the nursery business." Witness Davis and Caver both said that in the presence of Scott, Reeves, and Jordan, the latter was introduced to them as "our partner." Witness Lynch testified that in the early part of 1914 Reeves said that he "was satisfied that in less than five years,

with the interest Jordan had in the business, he could make more money in it than at anything else he could do."

But we need not follow the evidence by further detail. We find much corroboration of complainant in the testimony of many witnesses, as well as in portions, of the testimony of appellants themselves.

The following from *Pierce & Campbell v. Whitley*, 39 Ala. 172, is applicable to the facts as we conclude them to be established by the record in this case: "The circumstances convince us that the parties desired to have a written agreement, not as a means of establishing a partnership  *  *  *  already formed and in operation. After receiving the benefit of complainant's services as a partner, and recognizing him as such for  *  *  * four years, it is too late for the defendants to set up either his nonpayment of his portion of the capital stock or the nonexecution of written articles of partnership, as proof that no partnership ever existed."

And from *Boyd v. Mynatt*, 4 Ala. 79, the following finds some application in the case under consideration: "The practice established in courts of equity on this subject is to read the articles of partnership, when they contain clauses which have not been acted on, as if these clauses were expunged, or were not inserted therein."

And in *Stein v. Robertson*, 30 Ala. 286, 292, it is said: "It may be conceded that Robertson did not fully comply with the contract on his part, by furnishing as much money as he agreed to furnish; and yet it would not follow that Stein had a right to repudiate him as a partner. He has gone on, and, as he virtually admits, accepted money from Robertson, under the contract; and he freely availed himself, as the testimony shows, of the influence, financial skill, and services of Robertson, in the procurement of the funds required in the prosecution of the work. There are cases in which a partner may dissolve the partnership, and there are cases in which he may sue upon the articles of copartnership, at law, for the recovery of damages, and there are, also, cases in which he may file a bill, to compel the performance of copartnership articles, when the terms of the copartnership have been violated by the other partner; but it cannot be tolerated that one partner, after accepting the money and services of another, shall, when called upon to carry out the partnership, be heard to deny that any joint interest ever existed,

[Reeves, et al. v. Jordan.]

because all the stipulations of the contract of partnership have not been complied with."

In Bates on Partnership, vol. 1, § 86, is the following: "Inasmuch as acting together as partners may constitute a partnership, though no written articles by agreement be entered into, so actually beginning the joint business or launching it together, although something remains to be done or conditions to be performed by one or all, will constitute an immediate partnership inter se and as to third persons. This is, as it were, converting a condition precedent into a condition subsequent."

(3) We are convinced from this record that the complainant first became interested in this business by an offer of partnership on the part of appellants; that he, acting for them, acquired the interest of the Draimes brothers, the accomplishment of which was very acceptable to Reeves and Scott; that he took charge of the business and managed it successfully, bringing it from a doubtful enterprise into one with good business prospects; that further execution of papers by the parties was merely delayed from time to time, but was not treated as a matter of any serious moment by any of them; that no demand was made on Jordan to execute the note, but that, on the contrary, he was treated as a partner and encouraged to regard himself as such, and to consider that the execution of the note was not a very material matter; and that if the stipulations in the contract could at first have been construed as conditions precedent, they were waived as such by the parties in subsequent dealings with one another. In reaching this conclusion we have given careful attention and study to only the legal evidence in the case, leaving out of view the testimony of those witnesses who testified only as to their general understanding or opinion concerning the partnership.—*St. Louis & T. R. P. Co. v. McPeters*, 124 Ala. 451, 27 South. 518; *First Nat. Bk. Tuscaloosa v. Leland*, 122 Ala. 289, 25 South. 195.

(4) In construing the contract here under consideration, we have treated as competent evidence going to show the circumstances surrounding the parties at the time and on the occasion giving rise to the same; as well as given due consideration to the object to be accomplished.—*Couch v. Woodruff*, 63 Ala. 466.

Counsel for appellant have pressed upon our attention the cases of *Westwood v. Cole*, 66 Misc. Rep. 53, 120 N. D. Supp. 884,

and *McGraw v. Pulling*, 1 Freem. Cm. 357, neither of which is from a court of last resort. The later is from the chancery court of Mississippi, and the former seems to be from the trial court of New York. We do not find, however, in either of these cases any striking analogy to the one here under consideration. In the New York case the opinion shows that the plaintiff was persistently urged by the defendants to contribute his share of the funds and to come into the partnership, and told that unless he did so, the agreement entered into would be considered at an end. All demands made upon the plaintiff were of no avail; he contributed neither funds nor labor. The court held that the plaintiff had "expelled himself" by abandonment of the enterprise. The Mississippi case dealt merely with the construction of an oral agreement entered into by the parties, and therein it was shown that the defendant had failed and refused to execute his note with a satisfactory indorser; and the court was of the opinion that the execution of such a note was considered by both parties as a condition precedent to the acquirement of any interest in the concern. The report of that case discloses an entirely different state of facts from that in the case at hand. We find nothing in either of these cases, therefore, which, in our opinion, militates against the conclusion here reached. We are persuaded that the court below was fully justified in the decree rendered, and the same is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.