(83 South. 57)

ORMAN v. WILSON et al. (8 Div. 118.)

(Supreme Court of Alabama. June 26, 1919. Rehearing Denied Oct. 23, 1919.)

1. PARTNERSHIP ⬅11—PARTNERSHIP AGREE-MENT; NECESSITY OF PROOF.

In an action for a partnership accounting, evidence of an agreement whereby complainant gave his services only, to the business for a consideration, respondents furnishing the capital with an agreement to divide net profits among the complainant and the two respondents, was insufficient to establish the partnership, where no agreement to share losses as well as profits was shown.

2. PARTNERSHIP ⬅321—ACCOUNTING; EFFECT OF LACHES.

Where an alleged mercantile partnership was formed in 1880 and ceased to do business in 1890, a bill for an accounting in 1915 will not lie because of laches, and the rule of prescription; more than 20 years having elapsed.

3. PARTNERSHIP ⬅271—DISSOLUTION; AS-SIGNMENT BY PARTNER FOR BENEFIT OF CREDITORS.

Where complainant alleging a partnership made an assignment for benefit of creditors and subsequently was adjudicated a bankrupt, any partnership that may have existed was thereby dissolved.

4. PARTNERSHIP ⬅278 — DISSOLUTION; POWERS OF PARTNERS.

On dissolution of a partnership, one partner no longer has power to bind the others ex-cept as to making good outstanding engagements.

Appeal from Circuit Court, Franklin County; C. P. Almon, Judge.

Bill by W. A. Orman against James E. Wilson and Charles Wilson to dissolve a partnership and administer its assets, for an accounting, and to charge respondents with money received for certain land, and for partition of land. From a decree dismissing the bill, complainant appeals. Affirmed.

The allegations of the bill are that in 1880 complainant and respondents formed a partnership under the name and style of Wilson Bro. & Co., for the purpose of conducting a mercantile company at Bellgreen, under an agreement that respondents should furnish the capital and complainant would conduct the business for a small salary, and that the three would share equally in the profits and losses of the business, and that, while there was no agreement as to the time when the partnership would terminate, on January 1, 1890, the business was closed out by the sale of the entire stock of merchandise to Wilson & Co., another partnership then existing at Russellville, Ala., and composed of the two respondents herein. It is then alleged that this sale did not dissolve the partnership of Wilson Bro. & Co., but that the partnership relation thereafter continued, and the notes, accounts, and lands were left in charge of complainant for the purpose of collecting and paying debts and otherwise managing the assets; that in 1893 complainant moved from Bellgreen to Russellville, but continued to manage the affairs of the partnership of Wilson Bro. & Co. for a consideration of $75 per month as compensation for his service; and that he continued to draw this salary for about four years, but since that time has drawn no further salary, notwithstanding he continued to manage and control the same and devoted much time to the preservation of the assets.

It is further alleged that complainant had a personal account with Wilson & Co. and also had an account with Wilson Bro. & Co.; that the books of the latter company were kept by complainant, and are still in charge of complainant; while the books of Wilson & Co, are kept by and still in charge of that firm; and that the accounts extend over a period of 35 years and are intricate and complicated, and an accounting is necessary to ascertain the true status between the parties hereto. It is further alleged that the partnership of Wilson Bro. & Co. acquired title to a large acreage of land, and also had notes and mortgages in account totaling about $30,000, and owed but few debts, which were soon thereafter paid, and that said firm acquired other real estate in the pay-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ment of debts due it, and that the real estate has greatly increased in value and has from time to time been sold, said sales being made and conducted by complainant for and on behalf of the firm and being signed by the individual members thereof; that the purchase money received for such sales was turned over to respondents and amount to a large sum, for which they are accountable to complainant. Facts are alleged tending to show that all parties to the partnership treated the same as continuing up to the time of the filing of this bill, such as execution of deeds by the individual members of the firm, the bringing of suits, and the filings of bills in the names of the parties composing the firm and acts of similar character. The bill also alleges that acquisition of other lands through debts belonging to the firm of Wilson Bro. & Co., but title taken the in the firm of Wilson & Co. The bill also alleges the frequent demands for settlement and the fact that complainant is entitled to participate in a division of the assets amounting to $60,000 or $70,000.

Travis Williams, of Russellville, A. F. Fite, of Jasper, and E. B. & K. V. Fite, of Hamilton, for appellant.

J. T. Kirk, of Tuscumbia, and W. H. Key, of Russellville, for appellees.

MAYFIELD, J. The bill seeks a settlement and an accounting of a partnership. The bill as amended was heard on full answers, and much proof, and was dismissed; from which complainant prosecutes this appeal.

[1] The decree of the trial court must be affirmed for several reasons. In the first place, we are not convinced that the averments of the bill as to the existence of a partnership were proven as alleged. There was a failure of proof that complainant was to share the losses of the business with his two alleged partners. For his connection with and services as manager, he was to receive a stipulated amount as salary, and a certain per cent. or aliquot part of the net profits—if such there were—but no agreement to share the losses, which was necessary to constitute a partnership. The alleged business was a general mercantile business which continued for ten years; the complainant giving to the business only his services, and the respondents furnishing the capital, with an agreement to divide the net proceeds among the three. Under the repeated ruling of this court, this did not constitute a partnership. Zuber v. Roberts, 147 Ala. 512, 40 South. 319. There must be an agreement to share losses as well as profits. Stafford v. Sibley, 113 Ala. 447, 21 South. 459; Tayloe v. Bush, 75 Ala. 432. What was said in the case of Tayloe v. Bush is apt and conclusive here:

"The test of a partnership generally, whether the controversy is between the parties, or quoad third persons, is whether there is a community of interests, a participation in losses and profits. Howze v. Patterson, 53 Ala. 205, 25 Am. Rep. 607; Autrey v. Frieze, 59 Ala. 587. The rule is not without its exceptions; and when a party is without interest in the capital or business, and is to be compensated for his services from the profits, or rewarded by the profits, or what is to depend upon the result of a common adventure or enterprise, the rule is without application. Richardson v. Hughitt, 76 N. Y. 55 (32 Am. Rep. 267); Emanuel v. Draughn, 14 Ala. 303; Couch v. Woodruff, 63 Ala. 466. This contract is within the exception; the participation of Thomas in the profits was simply intended as compensation to him for his skill and services as the manager of the stock and plantation, and in the cultivation and gathering of the crops."

[2] If, however, we should be in error as to this conclusion, the right of action here sought to be enforced—if it ever existed— was lost, barred, or foreclosed long before this bill was filed in the year 1915 by both laches and the rule of prescription. The alleged partnership, if it ever existed, was formed in 1880, thirty-five years before the bill was filed, without any specification as to the time of duration; and ceased to do business as such in 1890, twenty-five years before the bill was filed. It was alleged to be a general mercantile business, and when it ceased to be a going concern, in 1890, it assigned and sold its entire stock of goods, retaining only its accounts and lands which it had acquired. Complainant was employed to collect these accounts, and sell the lands. Out of the amounts collected he retained his salary, and paid over the balance to respondents without any claim thereto.

[3, 4] After this assignment complainant engaged in a similar business of his own, and made a general assignment of all his property subject to levy and sale for the benefit of his creditors, and included therein his interest in this partnership. He made this assignment in 1894. Four years thereafter, in 1898, he was adjudicated a bankrupt. If this was not a dissolution of the partnership, if it ever existed, it would be difficult to know what would amount to a dissolution inter partes. Whenever a partnership is dissolved, the object of the association is terminated, and nothing remains to be done, except the arrangement of the affairs of the partnership may be said to continue. Engagements may be contracted which cannot be fulfilled during its existence, exposed as partnerships are to sudden and extraordinary terminations. For the purpose, therefore, of making good outstanding engagements, the partnership must, in legal contemplation, have a continuance, although, as between the parties themselves, it is actually determined. Gow. on Part. 212. Beyond this, the power of the former partners to bind each other does not extend. After the dissolution of the partnership, they are not the agents of

each other, except for the purpose of making good outstanding engagements. They cannot enter into a new contract, or engagement for their former partner. They have no authority, either express or implied, for any such purpose, nor does the necessity or public convenience require that they should. They become so disunited in interest that the one cannot by any contract or engagement implicate the credit of the other. Gow. on Part. 310. "The authority," say the court, in Sanford v. Mickles & Forman, 4 Johns. (N. Y.) 227, "which exists during the continuance of a partnership, for one partner to bind his copartner, ceases on its dissolution." Again, in Hackley v. Patrick, 3 Johns. (N. Y.) 538: "After a dissolution of a copartnership, the power of one partner to bind the other wholly ceases." Levy v. Cadet, 17 Serg. & R. (Pa.) 128, 129, 17 Am. Dec. 650.

In this state, as in most of the states, there is a growing disposition to fix a period, beyond which human transactions shall not be open to judicial investigation, even in cases for which no statutory limitation has been provided. This period is sometimes longer, and sometimes shorter, dependent on the nature of the property and the character of the transaction. By common consent, 20 years have been agreed on as a time at the end of which many of the most solemn transactions will be presumed to be settled and closed. See 2 Story's Eq. 1028b. The nature of this presumption, and the manner of drawing it, are not in the mother country, and in the several states the same. Quoting from Sims v. Aughtery, 4 Strob. Eq. (S. C.) 103:

"The lapse of 20 years * * * is sufficient to raise the presumption of almost anything that is necessary to quiet the title of property."

Equity will remain inactive where a party seeking relief therein is guilty of unreasonable laches, and this, irrespective of the statute of limitations. Nothing can call forth equitable interference but conscience, good faith, and reasonable diligence. If these are wanting, the court is passive and does nothing. Laches, staleness, and neglect are discountenanced in equity, and especially in matters of accounts where they are barred by the statute of limitations. Courts of equity refuse to interfere after a great lapse of time, and refuse because of considerations of public policy and from the difficulty of doing entire and exact justice when the original transactions have become obscure by the lapse of time and evidence may be lost. Salmon v. Wynn, 153 Ala. 538, 45 South. 133, 15 Ann. Cas. 478. If parties cannot come into equity without submitting to do equity, a fortiori they cannot come for the interference of this court in their own behalf when their conduct before coming has been such as to prevent equity being done. Salmon v. Wynn, supra.

There are other reasons why no relief could be awarded but we deem it unnecessary to discuss them.

Let the decree be affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.