# Zuber v. Roberts.

### Bill to Settle Partnership.

#### (Decided Feb. 17, 1906.   40 So. Rep. 319.)

*Partnership; Contract; Sharing Profits.*—Where one rented a quarry, furnished all the capital to run the business, and assigned no part of his lease to another, who agreed to manage the quarry and commissary and give the business his time and attention, and to receive half of the net proceeds of the profits of the quarry and commissary and one half the rental of the houses, instead of a stipulated salary, constituted an agreement for services to be paid for from profits, and was not a contract of partnership.

APPEAL from Calhoun Chancery Court.

Heard before Hon. W. W. WHITESIDE.

This is a bill filed by Zuber for the dissolution of a partnership alleged to exist between complainant and Roberts and for an accounting. The facts sufficiently appear in the opinion of the court.

BURNETT, HOOD & MURPHY, for appellant.—Whether there existed a partnership is a question of intention of the parties to be gathered from the contract itself and the acts of the parties in carrying out the agreement as their construction of its terms and what they understood it to mean.—A. & E. Ency. of Law (1 Ed.) 905. A business which is really a partnership might be conducted in the name of one partner and yet the silent partner be held as a partner.—*Bank v. Hennessy,* 48 N. Y. 545. What is necessary to constitute a partnership inter sese is ably discussed in the following cases:—*Leggest v. Hyde,* 17 Am. St. Rep. 244; and numerous cases cited; *McClay v. Freeman,* 48 Mo. 234; *Cansler v. Wharton,* 62 Ala. 358; *Moore v. Smith,* 19 Ala. 774. The following cases are identical or similar in all essential features to the case at bar.—*Autrey v. Freeze,* 59 Ala. 587; *Lee v. Ryan,* 104 Ala. 125; *Dabb v. Halsey,* 16 John. 34; *McCrary v. Slaughter,* 58 Ala. 230.

[Zuber v. Roberts.]

KNOX, ACKER & BLACKMON, for appellee.—The old rule that any sharing of profits constitutes a partnership has long since been abandoned in Alabama.—*Pulliam v. Schimpf,* 100 Ala. 364. Under the facts in this case the contract did not make the parties partners inter sese.—*Faile v. McCree,* 36 Ala. 61; *Robinson v. Bullock,* 58 Ala. 618; *Mayrant v. Marsten,* 67 Ala. 453; *Humes v. O'Brien,* 74 Ala. 64; *Nelms v. McGraw,* 93 Ala. 245. The court's attention is called to the following cases as sustaining the ruling of the Chancellor on the facts in this case.—*Tayloe v. Bush,* 75 Ala. 432; *Houze v. Patterson,* 53 Ala. 205; *Autrey v. Freeze,* 59 Ala. 587; *Stafford v. Sibley,* 106 Ala. 192.

DOWDELL, J.—The bill in this case is filed for the purpose of a settlement of an alleged partnership between the complainant and respondent. The respondent, by his answer, denies the allegations of the bill as to the existence of any partnership between the parties. There was no contract in writing, and there was no express agreement between the parties for the creation of a partnership; and the determination of this question must be had from the terms of the agreement entered into between the parties, the character and conduct of the business, and the intention of the parties, to be gathered from the circumstatnces attending the entire transaction.

The evidence discloses that in 1900 Paul Roberts obtained a lease for the Alabama Consolidated Coal & Iron Company on a limestone quarry and entered into a contract to furnish said company with 200 tons of limestone a day for a term of three years. At this time the appellee was superintendent of the Alabama Consolidated Coal & Iron Company's furnace at Ironaton, Ala., and the appellant was an employe of said company under the appellee as superintendent. An agreement was subsequently entered into between the parties, whereby the appellee was to furnish the capital for the equipment of the quarry and for stocking a commissary, etc., and the appellant was to manage the quarry and commissary

33

and for his services was to receive one-half of the profits derived from the quarrying of stone and one-half of the profits from the commissary, and, as the appellant states in his testimony, one-half of the rents collected on houses on the quarry premises.    Operations were conducted under this arrangement for about two years, when the appellee made a contract with the Alabama Consolidated Coal & Iron·Company whereby he surrendered his lease and canceled the contract for the supply of limestone during the unexpired time.    He was paid a sum of money by the Alabama Consolidated Coal & Iron Company for the surrender of his lease and cancellation of the contract, and the appellant thereupon filed his bill for a settlement of the alleged partnership, claiming that he was entitled to participate equally with appellee in the sum received by appellee for the cancellation of the contract and the surrender of the lease, all of which the appellee denies, and appellee claims that the business was his alone, and that a division of the profits was only an adopted method of fixing the compensation of appellant for his services as manager of the business.

The evidence shows that the business was conducted in the name of Paul Roberts, or in the name of the "Consolidated Quarry," which latter name was used by appellee for the convenience of the Alabama Consolidated Coal & Iron Company in the keeping of their accounts, and not as a partnership name.    The appellant claims and testifies that the name "Roberts & Zuber" was used in conducting the quarry·business, and the evidence shows that the appellant had some bills of lading for lime rock made out in the name of Roberts & Zuber. The appellee, on the other hand, testified that he did not authorize or consent to the use of such name, and, upon being informed that such name was being used, he notified the agent·of the railroad company and the clerk in the commissary,·who made out the bills of lading, that the bills should not be so made.    The evidence further shows that the goods for the commissary were purchased in the name of Paul Roberts, and, as shown by sundry exhibits attached to the deposition of Paul Roberts, the complainant, Zuber, would order goods for the commis-

sary, signing the name 'Paul Roberts per R. B. Zuber,"
on the paper of the "Consolidated Company," which
had the names "Paul Roberts, Proprietor," and "R. B.
Zuber, Mgr.," printed thereon. The account for lime
rock shipped to the Alabama Consolidated Coal & Iron
Company was kept in the name of Paul Roberts, and all
settlements were made with Paul Roberts by checks
drawn to his account. The capital for conducting the
business was all furnished by the appellee. The lease
on the quarry and the contract for the furnishing of
stone, which made the business possible, were the prop-
erty of the appellee, and were never by him transferred
or assigned in any way to the appellant, in whole or in
part. On the other hand, the appellant contributed to
the arrangement only his services as manager, and for
such services received, instead of a stipulated salary, one-
half of the net profits. The appellant himself testifies
that the agreement was that the appellee should put up
the money in lieu of appellant's services, and certain
profits were to be divided between them.

While the evidence shows a community of interest in
the profits, it does not satisfactorily show that under the
arrangement and conduct of the business there was to be
any community in the losses. The appellant contends
that the fact, which is undisputed, that he bore his part
of the loss in the payment of damages for an injury suf-
fered by one of the employes working in the quarry mines
goes to prove that he was not only to share in profits,
but in the losses of the business as well, and therefore
he was a partner. As to this matter, the evidence shows
that at the time the appellant objected to paying any part
of said loss, and the evidence further explains why he
consented to pay one-half, and this was not upon the
ground of any partnership liability. The facts in the
present case are very much like those in the case of *Tay-
loe v. Bush*, 75 Ala. 432, where there was a contract for
the conduct of a farm; the agreement providing that one
party should furnish the farm and certain stock, tools,
etc., the other to conduct it, keep an account of all ex-
penses, and to make equal division of the net proceeds.

It was said in that case: "In determining whether a partnership was created, the intention of the parties is the single question for consideration. There is a well-recognized distinction between cases where third persons have dealt with parties, associated in business as partners, and controversies between the parties themselves, or controversies in which the rights of such persons are not involved. In the one class of cases, a partnership may arise by mere operation of law, without an inquiry into or in direct opposition to the expressed intention of the parties. In the other class of cases, the question is as to the intention of the parties.  *  *  * The test of a partnership generally is whether there is a community of interests, a participation in losses and profits.—*Howze v. Patterson,* 53 Ala. 205, 25 Am. Rep. 607; *Autrey v. Frieze,* 59 Ala. 587. The rule is not without its exceptions; and when a party is without interest in the capital or business and is to be compensated for his services from the profits, or rewarded by the profits or what is to depend upon the result of an adventure or enterprise, the rule is without application. This contract is within the exception. The participation of Thomas in the profits was simply intended as compensation to him for his skill and services as the manager of the stock and plantation and in the cultivation and gathering of the crops." Again it is said in *Stafford v. Sibley,* 106 Ala. 192, 17 South. 324: "An agreement by which one is to share in the profits alone does not create a partnership. The agreement should bind the parties to share the burden of losses. One who is to receive for his share a percentage of net profits, and if there are no profits is to be paid nothing, in one sense is affected by losses; but if by the agreement he is to contribute nothing to make good the losses, if he is under no legal liability therefor, he does not bear the burden of loss in its legal signification as an element of partnership."

Applying this law to the facts in this case, as we gather them from the evidence, we are of the opinion that no partnership existed between the parties. To our minds, the weight of the evidence shows that it was never the

[Hutchinson v. Palmer, *et al.*]

intention of the parties to create a partnership, and that . the agreement to divide the profits was only a mode, adopted by the parties, in fixing the appellant's compensation for the services which he was to render. It follows, therefore, that the decree appealed from must be affirmed.

Affirmed.

TYSON, ANDERSON, and DENSON, JJ., concur.