(79 South. 160)

QUARLES et al. v. KENDRICK MERCAN-
TILE CO. (2 Div. 135.)

(Court of Appeals of Alabama. May 14, 1918.)

1. BILLS AND NOTES ⟨key⟩467(2)—ACTION ON NOTE—PLEADING.

If allegations of complaint as to indorsement of note by payee to plaintiff were insufficient to show that legal title passed, in absence of an averment of delivery, demurrers, taking point that averments were insufficient to show that plaintiff was holder of legal title, were properly overruled, where it did not appear from complaint that note was negotiable, and governed by Code 1907, §§ 2489, 4985.

2. BILLS AND NOTES ⟨key⟩467(2)—ACTION ON NOTE—PLEADING.

In action on a negotiable note, allegation that note was indorsed to plaintiff by payee imported a delivery.

3. APPEAL AND ERROR ⟨key⟩1040(10)—HARM-
LESS ERROR—PLEADING.

Conceding that complaint in action on note was bad because insufficient to impose on plaintiff burden of showing note was executed by defendant, it was harmless to overrule a demurrer thereto, where defendant filed a plea of non est factum.

4. PLEADING ⟨key⟩136—PLEAS—DEMURRER.

It was not error to sustain demurrers to pleas setting up matters provable under the general issues.

5. JOINT ADVENTURES ⟨key⟩7 — RIGHTS OF THIRD PARTY.

Where one of two persons in joint farming operations authorizes other to open account in name of both, it is not essential to a dealer's right of recovery on account that a partnership as between such two persons be shown.

6. PARTNERSHIP ⟨key⟩30 — RELATION — THIRD PERSON.

Where one person furnished money and another person managed a farm, fact that each participated in profits constituted them partners as to third persons.

7. JOINT ADVENTURES ⟨key⟩8—ACTIONS—IN-
STRUCTIONS.

Where plaintiff was suing the parties in farming venture, and there could only be losses where the expenses exceeded the profits, an instruction as to essentials of a partnership was not misleading in using term "division of expenses" instead of "division of losses."

8. TRIAL ⟨key⟩296(1)—INSTRUCTIONS.

If instruction as to essentials of partnership was misleading in not clearly stating that an agreement to share losses was essential, misleading tendencies were clearly overcome by an instruction so stating specifically.

Bricken, J., dissenting.

Appeal from Circuit Court, Dallas County; B. M. Miller, Judge.

Assumpsit by the Kendrick Mercantile Company against W. W. Quarles and R. R. Kimmer. Judgment for plaintiff, and defendants appeal. Affirmed.

Certiorari denied by supreme court, 79 South. 394.

The facts sufficiently appear in the opinion. The following is charge 100 No. C:

I charge you, gentlemen of the jury, that where two men agree that one man shall furnish the land, the mules, the farming implements, and to bear all the expenses thereof, and another man agrees to manage the place, be responsible for one-half of the expenses for the operation, but that all expenses of operation shall be paid out of the proceeds of the plantation if possible, and that if there shall be any profit they should be divided between them, such an agreement would constitute each of them liable as partners.

Charge 9½, given at the request of defendant, is as follows:

An agreement to share losses is as essential to create the relation of partnership, as an agreement to share profit.

Charge B, given for plaintiff, is as follows:

If you are reasonably satisfied from the evidence, after considering all the evidence, that Col. Quarles authorized R. R. Kimmer to make an account with plaintiff in the joint name of Quarles and Kimmer, with plaintiff, for goods and advances of money to be used on the farm, and if you further are reasonably satisfied from the evidence, after considering all the evidence, that defendant Kimmer did in the joint name of defendant buy goods and receive advances of money from plaintiff, and used said goods and money on and in the regular business of said farm, then you must find for plaintiff for the amount of such goods and advances so procured from plaintiff, and not paid for, whether defendants were partners or not.

Reese & Reese, of Selma, for appellants. S. F. Hobbs, of Selma, for appellee.

BROWN, P. J. [1, 2] The beneficial owner of a nonnegotiable promissory note may maintain an action thereon, although he is not the holder of the legal title. Code 1907, § 2489. Therefore, if we treat the averments of the second count of the complaint as to the indorsement of the note by the payee to the plaintiff as insufficient to show that the legal title passed thereunder, in the absence of an averment that the indorsement was completed by delivery (Code 1907, § 4985), the demurrers, taking the point that the averments of the complaint were insufficient to show that the plaintiff was the holder of the legal title, were properly overruled in this case, for the reason that it does not appear from the complaint that the note sued on contained words of negotiability, and was governed by the commercial law. Code 1907, § 2489; Weinstein et al. v. Citizens' Bank,

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

13 Ala. App. 552, 69 South. 972; Whatley v. Muscogee Bank, 197 Ala. 402, 72 South. 1018. However, in an action on a negotiable note, an averment in the complaint that the note was indorsed to the plaintiff by the payee imports a delivery. Sherrill v. M. & M. Bank, 195 Ala. 175, 70 South. 723.

[3] So, also, if the averments in this count that the note "was made by the defendants" be treated as insufficient when construed in connection with the averment that the note was signed "Quarles and Kimmer, per R. R. Kimmer," to impose on the plaintiff the burden of showing that the note was efficaciously executed by appellant, and that the question is well presented by demurrer, all injury resulting from the overruling of the demurrer was averted by the defendant filing a plea of non est factum, which properly presented the issue and placed the burden upon the plaintiff of showing that the note was so executed.

[4] The appellant's fifth and sixth pleas were originally filed as a partial answer to the first count of the complaint, to wit, "as to the item or charge of $86.50 for mower and rake," and were adopted verbatim as an answer to the third count. It is so manifest that the demurrers to the pleas in this form were properly sustained that we deem it unnecessary to treat them further. Moreover, the matters set up by these pleas were provable under the general issue. We have examined the several rulings of the court on the pleadings, and find no error therein.

[5, 6] There was evidence tending to show that Kimmer was authorized by Quarles to open an account with the plaintiff for supplies to be used in the joint adventure and farming operations in which Quarles and Kimmer were engaged, and that the account sued on was made in pursuance of this authority. There was also evidence that the mower and rake for which the note described in the second count of the complaint was given were purchased through the plaintiff from the International Harvester Company, and after the note was executed by Kimmer in the names of Quarles and Kimmer, as averred in the second count of the complaint, that Kimmer informed the defendant Quarles of the fact of the purchase of said mower and rake and the execution of said note, and that Quarles, with a knowledge of all the facts, ratified the execution of the note. Therefore, it is not essential to the plaintiff's right of recovery in this case that a partnership as between Quarles and Kimmer be shown. Furthermore, if, as the undisputed evidence shows, Kimmer and Quarles each participated in the profits of the business, although Kimmer had no interest in the capital or property invested in the business, this would constitute them partners as to third persons, and they were liable as such in this case. McDonnell v. Battle House Co., 67 Ala. 90, 42 Am. Rep. 99.

[7] On the case made by the evidence, it clearly appears that the only way losses could result to Quarles and Kimmer in their farming operations would be that the expenses of operation exceeded the profits arising from the business, and charge designated "100 No. C," as applied to the evidence, hypothesizing that they were each liable for one-half of the expenses, was a correct statement of the law as to the essentials of a partnership inter se.

[8] If it could be said that the charge was subject to the criticism that it was misleading in not clearly stating that an agreement to share losses is an essential to create the relationship of a partnership inter se, its misleading tendencies were clearly overcome by the oral charge of the court and by special charge 9½, given at the request of the defendant Quarles.

Under the phases of the evidence adverted to, charge B was properly given at the request of the plaintiff. There was evidence tending to sustain all the counts of the complaint, and the affirmative charges as to the second and third counts of the complaint, requested by the defendant Quarles, were properly refused, and the motion for a new trial was properly overruled.

We find no reversible error in the record, and the judgment is affirmed.

Affirmed.

BRICKEN, J. (dissenting). I cannot concur in the opinion of my Brothers, nor in the affirmance of the judgment appealed from. The action is brought against W. W. Quarles and R. R. Kimmer. The complaint contains two counts; the first seeks to recover $350 due from them by account. The second seeks a recovery upon a promissory note signed "Quarles and Kimmer, per R. R. Kimmer."

As to the account, there was testimony tending to show that it was for goods purchased by Kimmer upon authority given him by Quarles.

As to the note, there was testimony tending to show that Quarles ratified the giving of it by Kimmer.

The oral charge of the court and the written charge 100 No. C, given at the request of the plaintiff, and the brief of appellee's counsel, show beyond doubt that the case was tried upon the theory that a partnership existed between the defendants.

The first error I shall notice committed by the trial court is the one overruling defendant Quarles' objection to the question propounded to Kimmer, plaintiff's witness: "To whom did you tell him to charge it to?" which the witness answered, "I told him to charge it to Quarles and Kimmer." The objection, in my opinion, should have been sustained, for the reason a partnership cannot be proved by the admissions or declarations of one of the parties claiming to be a

partner of another. Such a declaration is res inter alios acta, or hearsay. Scott Harper & Co. v. Dansby, 12 Ala. 714; Gross v. Langley, 50 Ala. 8; Clark v. Taylor, 68 Ala. 454; First National Bank v. Leland, 122 Ala. 289–295, 296, 25 South. 195.

That no partnership existed between Quarles and Kimmer on the undisputed testimony is beyond controversy. That Kimmer was not liable personally for any of the expense incurred in carrying out the enterprise is also beyond all controversy on the undisputed testimony in the case. The contract shows no more than a contract of hiring by W. W. Quarles of R. R. Kimmer. That contract was this:

Kimmer "was to manage the farm, get out timber, clear some land, and try to make the place bear the expense, and all over that would be divided equally. Quarles was to furnish land, stock, wagons, and other implements; he was to furnish everything; feed and such as that was to come back to him out of the crop or timber, until he was paid what he had advanced."

Kimmer was without interest in the land, stock, or farming implements, and it is clear that his compensation for the services he was to render was to be from the profits that were to be made as the result of the adventure or enterprise. He was not responsible personally for the expense of making the crops or the cutting of the timber. They were to be borne by Quarles, to be repaid him out of the crops or timber when sold. This state of facts was no more than hiring of Kimmer by Quarles, and not a partnership. As stated in Watson v. Hamilton, 180 Ala. pp. 3–5, 60 South. 63:

"To constitute the relation inter se, the contract must extend beyond a common agreement to share in the profits. It must equally bind the parties to bear the burden of the losses."

In other words, the contract between Kimmer and Quarles, in order to constitute them partners, must have imposed the obligation upon each of them to personally bear the losses.

The contract between them on principle cannot be differentiated from the one construed by the Supreme Court in the case of Taylor v. Bush, 75 Ala. 432. In that case, Paulling and Thomas entered into a contract to divide equally the crops and proceeds of a plantation owned by Paulling, as well as the increase in all stock on the plantation. Paulling agreed to furnish Thomas all the stock, tools, and provisions on hand at the time of making the contract, free of charge and the lands free of rent. Thomas was to take charge of the plantation and premises, stock implements and tools of Paulling, manage and conduct the farm, keeping an accurate account of all expenses incurred in the management of the farm and business, and to make equal division of the net proceeds of said farm annually with Paulling. The court, speaking through Brickell, C. J., held that the contract did not create a partnership between Paulling and Thomas, and in part said:

"The test of a partnership generally is whether there is a community of interests, and a participation in losses and profits. * * * The rule is not without its exceptions; and when a party is without interest in the capital or business, and is to be compensated for his services from the profits, or rewarded by the profits, or what is to depend upon the result of a common adventure or enterprise, the rule is without application. * * * This contract is within the exception; the participation of Thomas in the profits was simply intended as compensation to him for his skill and services as the manager of the stock and plantation, and in the cultivation and gathering of the crops."

In Zuber v. Roberts, 147 Ala. 512, 40 South. 319, Zuber filed his bill for the dissolution of an alleged partnership between himself and Roberts. The contract relied upon as showing the partnership was not in writing. Roberts, having a lease on a lime quarry, entered into a contract to furnish 200 tons of limestone a day for a term of three years. He entered into an agreement with Zuber whereby Roberts was to furnish the capital for the equipment of the quarry and for stocking a commissary; Roberts was to manage the quarry and commissary, and for his services was to receive one-half of the profits derived from quarrying the stone, and one-half of the rents collected from the houses on the quarry premises. The business was conducted in the name of the Consolidated Quarry or in the name of Roberts. However, the evidence of complainant tended to show that the name of Roberts and Zuber was used in conducting the quarry business, and that some bills of lading for lime rock were made out in that name. It further showed that goods for the commissary were purchased in the name of Paul Roberts. The court, speaking to this state of facts, said:

"While the evidence shows a community of interest in the profits, it does not satisfactorily show that under the arrangement and conduct of the business there was to be any community in the losses. * * * The facts in the present case are very much like those in the case of Taylor v. Bush, 75 Ala. 432, where there was a contract for the conduct of a farm; the agreement providing that one party should furnish the farm and certain tools, etc.; the other to conduct it, keep an account of all expenses, and to make equal division of the net proceeds."

The court, after indulging in the quotations from Taylor v. Bush and Stafford v. Sibley, 106 Ala. 192, 17 South. 324, held that there was no partnership existing between Zuber and Roberts. See, also, Code 1907, § 4743; Stafford v. Sibley, supra; 20 R. C. L. Partnership, §§ 39, 48.

As to the account sued on, there was no joint liability by Kimmer and Quarles. If the goods purchased by Kimmer was with Quarles' authority for the carrying out the enterprise or adventure, they were advances by Quarles, for which he alone was liable; and there could be no recovery for them in

this action, because the action is to recover upon an alleged joint liability.

As to the note, there could be no recovery unless there was a partnership between Quarles and Kimmer, or unless there was a ratification by Quarles, with full knowledge of the execution of the note by Kimmer, in the name of Quarles and Kimmer.

My Brothers hold that charge 100 No. C, given at plaintiff's request, enunciated a correct statement of the law as applied to the evidence, but that, if it be subject to the criticism of being misleading, in not clearly stating that an agreement to share the losses is an essential to create the relationship of a partnership inter se, its misleading tendencies were clearly overcome by the oral charge of the court, and by special charge 9½, given at the request of the defendant Quarles. The oral charge of the court clearly stated the essential elements to create a partnership, and charge 9½ was in this language:

"An agreement to share losses is as essential to create the relation of partnership as an agreement to share profits."

Charge 100 No. C was not merely misleading but abstract, as was the oral charge of the court, for the reason that it enunciated and instructed the jury as to the essential elements of a partnership. There was no partnership between Quarles and Kimmer, and the giving of it, in my opinion, was error, and that error was not cured by the oral charge of the court or by written charge 9½, given at the request of the defendant Quarles. In truth, the jury was instructed solely and exclusively upon the theory of a partnership, which the testimony shows never existed.

The proposiion in the opinion of the majority of the court:

"It is not essential to the plaintiff's right of recovery in this case that a partnership between Quarles and Kimmer be shown"

—is outside of and beyond any theory upon which the case was tried. No such contention appears to have been made in the trial court or here, and no such proposition was submitted by the trial court to the determination of the jury. As stated, the whole theory of Quarles' liability was predicated solely and exclusively upon the question of partnership vol non existing between him and Kimmer, and such was the theory upon which the case was tried, and that was the question submitted to the jury for their consideration and determination. Under the instructions of the court, the jury could not have determined Quarles' liability or nonliability upon any other hypothesis, for the reason that his liability upon any other theory than that of a partnership between him and Kimmer was not submitted to them for their determination. In short, whether Quarles authorized the making of the account or ratified the giving of the note, which was denied by him, was not submitted to the jury.

For these reasons, I am of the opinion that the judgment of the lower court should be reversed, and the cause remanded.