170 So. 329

**INDEMNITY INS. CO. OF NORTH AMERICA v. HOLIWAY.**

**8 Div. 735.**

Supreme Court of Alabama.

Oct. 15, 1936.

Jones & Poellnitz, of Florence, and W. H. Sadler, Jr., of Birmingham, for appellant.

L. R. Timberlake, of Florence, for appellee.

FOSTER, Justice.

This is an action at law tried by the court without a jury upon the basis of a fidelity bond or insurance contract. It is dated February 3, 1927, and recites that plaintiff has intrusted to one J. R. McGarry the sum of $18,000 to be invested, and the proceeds paid to plaintiff. The contract or bond was conditioned to indemnify and hold plaintiff harmless from any loss she might sustain by reason of the acts of McGarry, amounting to larceny or embezzlement.

The pleas were in short by consent of any matter shown by the evidence.

The evidence was that prior to the execution of the bond plaintiff had placed in the possession of McGarry sums aggregating an amount near $18,000, and not much thereafter. He made annual statements to her beginning in 1926, showing the amount of each investment. They were all in evidence except those for 1929, 1930, and 1931; the last was dated February, 1932. This suit was begun by service October 4, 1933.

Plaintiff gave McGarry instructions to loan the money on real estate mortgages not exceeding 50 per cent. of its value. McGarry was an officer of the Alabama

Trust & Savings Bank, and he did not testify in the case.

Counsel in argument do not claim any act of larceny by McGarry, but several acts of embezzlement. The court found that the amount so embezzled exceeded $18,000, the maximum amount of liability on the bond, and rendered judgment for that amount.

The bond is limited to acts of larceny and embezzlement, so that the only issue is whether he embezzled plaintiff's funds. The bond was continued in effect by the payment of annual premiums until McGarry ceased his operations for plaintiff. As applied to private business transactions and the facts of this suit, the situation is probably controlled by sections 3960 and 3966, Code, relating to the embezzlement of private funds. The gravamen of the offense is that a person shall rightfully come into possession of personal property as agent, trustee, etc., and shall fraudulently convert it to his own use (now also to the use of another—section 3960, Code), or fraudulently secrete it with intent to convert it to his own use or the use of another. Knight v. State, 152 Ala. 56, 44 So. 585; Pullam v. State, 78 Ala. 31, 56 Am.Rep. 21.

■ The term "embezzlement" has a technical meaning. It involves two elements; a breach of duty or trust in respect to property in his rightful possession, and the wrongful and fraudulent appropriation to his own use. The essence of the offense is the intent with which the act is done. That intent may be inferred from the doing of wrongful acts which will naturally and ordinarily produce loss, and that he has knowledge of the facts from which such loss will probably result. Reeves v. State, 95 Ala. 31, 41, 42, 11 So. 158.

Loans may be made contrary to legal duty without subjecting the person making them to a charge of embezzlement. But the statute "may be violated by fraudulent transactions under the guise of loans. * * * The distinction is between the making of mere irregular, unsafe, or reckless loans of the bank's money, which would amount to maladministration only, and pretended loans, made in bad faith, * * * and with fraudulent intent, and pretended borrower being an officer, agent, clerk, or servant, having control and custody of money of the bank by virtue of his office or employment, which control and custody is shared by those making the pretended fraudulent loan, and who participate in the fraudulent purpose of the pretended borrower." "A transaction such as is herein above referred to would not be a loan in any sense of the law; it would be a fraud, and such fraud may be accompanied by facts and circumstances which would constitute it embezzlement or a fraudulent conversion to the use of the accused, within the meaning of the statute." Reeves v. State, supra, 95 Ala. 31, at page 44, 11 So. 158, 163.

■ To be a violation of the statute applicable, except for the conversion of public funds, there must be a fraudulent conversion, either to the use of accused or another. Section 3960, Code; Cephus v. State, 16 Ala.App. 499, 79 So. 197. Since fraud is a mental attitude, proof of it takes a wide range. Fraud may be inferred and its inference is justified when one knowingly does an act which will probably result in injury to another. This has been applied to various situations, as when such a person buys goods in the course of a mercantile business without disclosing his financial condition. 24 Alabama & Southern Digest, 293, Sales, ☞45; 11 Michie Digest, 639.

■ When a trustee, agent, or bank officer lends money, in trust with him or his bank, to another, such a loan does not constitute embezzlement or a fraudulent conversion of that money to the use of such borrower, if it was a bona fide loan, as distinguished from one which is pretended, as when the borrower had no reasonable expectation or intention of repaying it and the trustee knew, or is charged in fact with knowledge, that such was the status of the borrower. That is a fraudulent conversion under the guise of a loan. And so, when such trustee converts the trust money to his own use, there must be a fraudulent intent. This rule has been changed as respects certain public funds. Section 3961, Code; McGilvary v. State, 228 Ala. 553, 154 So. 601; Garner v. State, 229 Ala. 600, 158 So. 546; Ex parte Cowart, 201 Ala. 525, 78 So. 879; Id., 201 Ala. 55, 77 So. 349. In this respect, as in all others, the question of intent is one of inference to be drawn from all the circumstances which include a wide range.

■ A loan* made by a trustee to himself is a conversion. It is embezzlement if, when made, the trustee had no reasonable expectation of being able to pay it or with-

out adequate security, or if a repayment was dependent upon some uncertain contingency.

In this case the evidence was very meager. Much light could be thrown on the various transactions by more detail. This would include the solvency of the borrowers, as then known to themselves and to McGarry; values of pledged property; the prospects of quick sales to meet the loans; local economic and business conditions (such as were nation wide are judicially known); the personal character and integrity of the borrowers, as well as the purpose and details of the loans, all as known to McGarry. The courts will not presume fraud, nor infer it, merely because the loans were "irregular, unsafe, or reckless." Reeves v. State, supra. But those are material factors to be considered when others exist to determine whether fraud should be inferred.

But when the trustee himself uses the money contrary to the instructions of the owner, by pretending to make a loan to himself, or for his own benefit, when he is insolvent or has no reasonable expectation of being able to repay it, or it is dependent upon the result of speculation or chance, or without adequate security, the jury or court trying without a jury may properly infer a fraudulent intent.

But in our Reeves Case, supra, 95 Ala. 31, at page 45, 11 So. 158, it was held that, if Reeves, an officer of the bank, made a loan of bank funds to himself, the other officers consenting, the books showing the entire transaction, to be repaid out of his crops then being cultivated, and had no intent otherwise manifested to embezzle the money when he received it, and no fraud otherwise appears, he was not guilty of embezzlement in making the loan.

McGarry did not testify in this case. Reliance seems to be had principally on the fact that he made the loan on a different basis from the instructions given him; that they proved finally not to be collectable, and plaintiff lost the full amount or has worthless paper. This alone is not sufficient as respects loans to others than himself.

We do not think it necessary to refer to the details of all the transactions by separate recital. All except two, we think, are insufficient to justify a finding of fraudulent intent upon the meager evidence in

this record, when they are considered in the light of the principles we have discussed. But we think a different result may be, as it was, reached by the court, in respect to the H. S. May loan of $210, December 11, 1928, and the loan to himself of $2,000, dated April 25, 1929.

As to the May transaction, May testified in substance that he had a lease sale contract from McGarry for a piece of property; subject to a mortgage held by Jemison. A note came due to Jemison, and he couldn't pay it, and attempted to surrender the property to McGarry, who suggested to him to send Jemison a check for the money and make his note so the bank would pay his check; that he turned the property back to McGarry, and had no intention of paying the note. Jemison later foreclosed and took over the property.

The court could infer that this was not a bona fide loan to May, but a use of the money in that form for the benefit of McGarry personally without adequate security and with no reasonable expectation of it being paid.

On April 25, 1929, McGarry executed and held in his possession a note to plaintiff for $2,000, which recited that it was secured by J. C. Cooper's notes for $4,000. The bank account shows a check cashed for $2,000 on May 28, 1929. J. C. Cooper gave very brief testimony that he had a transaction with McGarry in which the latter assumed two mortgages. He did not pay them. But they seem to have been the consideration of Cooper's notes and mortgage, which therefore failed. Plaintiff testified that the Cooper notes were never turned over to her, and she has collected nothing. The amount appears in his statement rendered plaintiff in 1932. Whether it appeared in the 1929, 1930, and 1931 statements is not shown, since they were not produced. So that we have here evidence of a loan by McGarry, trustee to himself, of the trust funds, upon inadequate or no security. What he did with the money does not appear. The circumstances called for an explanation by him or on his behalf. He did an act which he knew to be illegal, and was a conversion in law and fact. He is presumed to intend to convert it unless the contrary is shown. The contrary is not attempted to be shown. The situation therefore justifies a finding that such intent existed. While fraud will not ordinarily be presumed, it

will be presumed that one intended the ordinary result of his voluntary acts, and certainly in civil actions the court may infer that the intent existed unless the contrary is shown, under such circumstances.

 We think the court could very well have found that plaintiff gave notice to defendant promptly after she had notice that there might be one or more acts of embezzlement by McGarry. On December 16, 1932, she wrote defendant expressing a suspicion of it and advising that she had turned the matter over to her attorney, but was not prepared to make claim. She did file an itemized verified claim by letter of April 15, 1933, having written defendant again on December 26, 1932. Defendant made no suggestion as to the insufficiency of the notice and proof. It will therefore be deemed sufficient. Globe & Rutgers Fire Ins. Co. v. Pappas, 219 Ala. 332, 122 So. 346 (3); Taber v. Royal Ins. Co., 124 Ala. 681 (11), 26 So. 252; Franklin Life Ins. Co. v. Brantley, 231 Ala. 554, 165 So. 834, 835 (3).

The contract here in question is more in the nature of fidelity insurance than that of suretyship. 25 Corpus Juris, 1089; National Surety Co. v. Julian, 227 Ala. 472, 150 So. 474; Alabama F. & C. Co. v. Alabama Penny Sav. Bank, 200 Ala. 337, 76 So. 103.

We are therefore applying rules applicable to that sort of a contract.

 In such suits declarations of the trustee or agent, whose fidelity is insured, made in the course of his duties as such and pertaining to the business intrusted to him, are admissible in a suit against the insurer or indemnitor. But not such as are otherwise made. United States Fidelity & Guaranty Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622; Pan American Petroleum Corporation v. Mullack, 232 Ala. 271, 167 So. 728; 25 Corpus Juris, 1114, § 28, notes 29 and 30; Dixie Fire Ins. Co. v. American Bonding Co., 162 N. C. 384, 78 S.E. 430.

 Upon the basis of that principle, as well as the contract requirements, the annual statements made by McGarry to plaintiff were properly admitted. The ledger sheets of the bank in which an account for plaintiff was kept, and in which McGarry was cashier, were probably made under his supervision, related to matters pertaining to the execution of the trust made during the performance of the trust, when properly authenticated, as required by section 7701, Code, are admissible as shedding light on the inquiry, to the extent that they are pertinent to the issues.

 But the bankrupt proceedings signed by McGarry were begun and had even after this suit was begun, and after he had ceased to represent plaintiff. They are not admissible against this defendant, but are in the nature of hearsay evidence.

 Although an admission of liability to plaintiff may be a circumstance to show a violation of plaintiff's instructions, or a failure to use due care in making the loans, and those circumstances are material, with others, on an issue of embezzlement, such admission is not legal evidence against this defendant in this suit, unless it was made in the course of a performance of his duties as the agent and trustee for plaintiff.

The judgment is reversed and the cause remanded, so that on another trial the issues may be more fully tried, if the evidence is available. We prefer not to render final judgment.

Reversed and remanded.

ANDERSON, C. J., and GARDNER, and BOULDIN, JJ., concur.