The indictment charged the appellant, Damon Shelton Napier, and Pamela DeVine, an employee of Weaver and Morris Construction Company, Inc., with embezzling $15,000.00 from said company by virtue of Miss DeVine's employment with said corporation.[1]
The jury found the appellant guilty, as charged, and the trial court entered judgment, setting sentence at eight years' imprisonment.
Hosea Weaver testified that he was the owner of Weaver and Morris Construction Company with offices on Howells Ferry Road in Mobile, Alabama. He stated that he had formerly employed a young lady named Pam DeVine as his bookkeeper during March, 1975. He stated that he had met the appellant, Damon Napier. He stated that Miss DeVine began her duties as a secretary and had worked her way to being bookkeeper. She was authorized to sign checks for the company, but that she was to have him examine these before sending them out.
Mr. Weaver further testified that his company maintained its account with Merchants National Bank of Mobile. He then examined five checks, the first one being State's Exhibit Number 1, payable to Sharon Ann Bryars in the amount of $12,000.00, for Lot 26, Section 47, 2W, bearing the signature of Pam M. DeVine. He stated that he had not authorized this check, and that he did not know anyone by the name of Sharon Ann Bryars.
The second check was made payable to Barnett Secretarial Services, in the amount of $1685.00, again drawn on the company account, and signed by Pam M. DeVine. Mr. Weaver testified that such check was not authorized, nor did his company have any account with Barnett Secretarial Services.
State's Exhibit Number 3 was a check made payable to Pam M. DeVine, in the amount of $1500.00, which was not authorized.
State's Exhibit Number 4 was a check made payable to the appellant, Damon S. Napier, for $11,000.00, signed by Pam M. DeVine. This check also was not authorized by Mr. Weaver and his company had never done any business with Mr. Napier, nor had Mr. Napier performed any services for the company, and that his company was not indebted to Mr. Napier. Exhibit 5 was a check for $4000.00, signed by Pam M. DeVine, payable to Damon S. Napier, and marked for "cows." Mr. Weaver stated that this check was also not authorized by him.
He further testified that he had not purchased anything from Mr. Napier, nor had he ever purchased any cows from him. Mr. Weaver stated that after he discovered these checks, he called his accountant, Mr. Marshall Burden, that he had him go over his company's records, and also had him go to the Merchants National Bank to check the account with the bank officials. After these were admitted, a stipulation was then placed of record which showed that the appellant, on June 30, 1975, presented Weaver and Morris Construction Company's check No. 7219 to the Merchants National Bank and received a cashier's check, No. 426377, in the amount of $11,000.00 from the bank. The stipulation also showed that on July 1, 1975, the appellant presented Weaver and Morris Construction Company's check, No. 7222, to the Merchants National Bank and received a cashier's check, No. 426333, in the amount of $4000.00. The stipulation further shows that on June 30, 1975, the appellant, Damon Napier, went to Bill Steber Chevrolet Company and bought two automobiles. The first, a 1971 Chevrolet Corvette, and the second a 1966 Ford Galaxie, for a total of $4466.00, and received from Bill Steber Chevrolet Company in return a check for $6534.00. The stipulation also showed that on July 1, 1975, Damon Napier cashed the $4000.00 cashier's *Page 64 
check for cash, and also on July 1, 1975, he deposited the check which he received from Bill Steber Chevrolet Company for $4000.00 and took the remaining $2534.00 as cash. The stipulation further shows that the appellant, Damon Napier then subsequently wrote a cashier's check on his account for the $4000.00 remaining. This stipulation was placed in evidence through the district attorney and the appellant's counsel.
Mr. Marshall Burden testified that he was a practicing CPA in Mobile, Alabama and had handled the account of Weaver and Morris Construction Company for the past fourteen years. He testified that Mr. Weaver contacted him and asked him to go over the company's books, that he telephoned Merchants National Bank and went down to examine the company's account. In examining the check for $12000.00 to Sharon Ann Bryars, he determined that she was not anyone that the company had ever done business with and he so notified the bank, and this check did not clear the bank. He further testified that the construction company actually had over $100,000.00 on deposit so that it was not unusual for large checks to be written on the company's account. He further stated that in his examination of the company's records, the company had not done business with a Barnett Secretarial Services, nor with the appellant, Damon Napier. He stated that Miss Pam M. DeVine was authorized as bookkeeper to sign company checks.
On cross-examination, Mr. Burden stated that insofar as her authority was concerned, she had authority to sign checks for large amounts, but she was to obtain the permission of Mr. Weaver before doing so. He further testified that in examining the company's check book, he noticed the stubs were marked on the books payable to various companies, such as Leary and Owens Equipment Company, and others that Weaver and Morris Construction Company regularly did business with. He stated that the check to Barnett Secretarial Services for $1685.00 had cleared the bank, along with the $4000.00 and $11000.00 checks made payable to Damon Napier, the appellant.
Mr. Burden further testified that he was familiar with the company's books and records and that at no time had the construction company ever done business with Barnett Secretarial Services, Sharon Ann Bryars or Damon Napier. He testified that the total sum taken from Weaver and Morris Construction Company through the checks in question amounted to $22,531.23, and that of this, $15,000.00 was in checks made payable directly to the appellant, and other checks had been endorsed by Miss Pam M. DeVine.
Pamela M. DeVine testified that she had formerly been employed, first as a secretary, and then as bookkeeper for Weaver and Morris Construction Company in Mobile, Alabama. She testified that during May and June, 1975, she was bookkeeper and wrote out checks in behalf of the company. She stated that she left the employment of this company in July, 1975. She testified that Mr. Weaver had approached her concerning the writing of the checks, which she admitted she had not obtained his approval for. She stated that she had written out the check to Sharon Ann Bryars for $12,000.00; that she did not obtain anyone's authority to write this check, but that this check did not clear the bank. She further testified that she did write out the check to Barnett Secretarial Services for $1685.00 and had put in the left hand corner the notation, "Gill Trailer Inventory." She stated that this check was not authorized, but that it had been cashed, and that she had given it to the appellant, Damon Napier, whom she identified in court. She further identified a check for $1500.00 which she made out to herself and deposited to her account, then gave the proceeds to the appellant, Damon Napier. She then identified a check for $11,000.00 which she had made payable to Damon Napier and which was endorsed by him. She testified that this check also was not authorized. Miss DeVine then identified a $4000.00 check, also payable to Damon Napier, and endorsed by him, which had not been authorized *Page 65 
by the company. She further testified that she and Mr. Napier had been good friends, and that she had once gone on a trip to Arizona with him. She further testified that after Mr. Weaver got in touch with her about the checks, Mr. Napier told her he would try to get up the money to pay back the amounts to Weaver and Morris Construction Company. She also testified that she was taking heroin at the time she wrote out these checks [R. 72].
On cross-examination, Miss DeVine admitted that she was also charged with embezzlement in this case, but that there had been no promises made to her by anyone in return for her testimony in this case.
The appellant's motion to exclude the State's evidence was overruled.
The appellant called as his only witness Riley Gatlin, who testified he was employed by Bill Steber Chevrolet Company of Mobile. He testified that the appellant had brought him a cashier's check from Merchants National Bank, and that on June 30, 1975, he had purchased a 1971 Corvette and a 1966 Ford, that he had turned over the paper work to the finance manager, and that his company had given Mr. Napier a check for the difference.
 I
Embezzlement is a statutory criminal offense. Knight v.State, 152 Ala. 56, 44 So. 585; Adams v. State, 43 Ala. App. 281, 189 So.2d 354; Hill v. State, 48 Ala. App. 240,263 So.2d 696.
The prosecution in the instant case was pursuant to the provisions of Title 14, Section 126, Code of Alabama 1940.
Mr. Justice McCall in Benefield v. State, 286 Ala. 722,246 So.2d 483, observed the following:
 "To support a conviction for embezzlement, the burden is on the State to prove that, after acquiring possession of money, property or effects as the agent of the owner, the accused fraudulently converted it to his own use, or to the use of another. Reeves v. State, 95 Ala. 31, 11 So. 158; Eggleston v. State, 129 Ala. 80, 83, 30 So. 582; Knight v. State, 152 Ala. 56, 44 So. 585; Rogers v. State, 259 Ala. 124, 65 So.2d 531; Boyd v. State, 41 Ala. App. 507, 511, 138 So.2d 60; Hart v. State, 41 Ala. App. 221, 127 So.2d 390. In order to justify the submission of the case to the jury, it is necessary that there should be proof of at least some act from which the jury can infer that the offense was committed. Rogers v. State, 259 Ala. 124, 65 So.2d 531; Knight v. State, 152 Ala. 56, 60, 44 So. 585; Henderson v. State, 129 Ala. 104, 29 So. 799; Hurst v. state, 21 Ala. App. 361, 108 So. 398."
It is clear from the evidence presented that Miss DeVine had no authority to issue the five checks introduced in evidence, two of which were made payable to the appellant, Damon Napier, and the proceeds of two others turned over to the appellant after clearing the bank.
We are of the opinion that the State here presented a prima facie case, and the appellant's motion to exclude was therefore properly overruled. England v. State, 23 Ala. App. 361,125 So. 687; Garner v. State, 26 Ala. App. 246, 158 So. 543, cert. denied, 339 Ala. 600, 158 So. 546; Volume 29A C.J.S. Embezzlement Sec. 26b.
 II
During the examination of Miss DeVine, the following occurred [R. 72-74]:
 "Q. All right. Now, Miss DeVine, at the time this all transpired, back in June, were you taking any narcotics at that time?
"A. Yes.
"Q. What drug were you taking?
"A. Heroin.
"Q. I'm sorry, I couldn't hear you.
"A. Heroin.
"Q. Heroin? From whom were you getting the heroin?
"A. A number of people.
"Q. Was Damon Napier one of the ones?
"A. Yes.
 "MR. STEPHENS: Judge, I'm going to object. I'm going to object to this, and I move to exclude it, it's highly prejudicial, *Page 66 
it has no probative value in this case, and we move for a mistrial.
 "MR. HUGHES: Your Honor, may I be heard? Briefly, it goes to show the relationship between these two people, and I submit to the Court it goes to show that he was the dominant force over her.
 "MR. STEPHENS: Judge, Mr. Napier is on trial for embezzlement, for embezzling two checks in the amount of $11,000.00 and $4,000.00, and he's not on trial for any type of narcotics. This can have nothing to do but prejudice the jury when you throw in these narcotics. It's highly inflammatory, Judge, and it has no probative value on this case whatsoever.
 "THE COURT: I'm going to exclude that answer at this time. Gentlemen, here is the situation we are in, and I want you to listen closely. It is important for you to consider the relationship between the parties. You know, as to why people did things. But it's far more important that you consider only the charge against this man, which is embezzlement. Now, if the witness's statement that she received or acquired in some manner heroin from the Defendant, Mr. Napier, is going to prejudice you against him in any way, and have any influence on your determination of his guilt or innocence of the charge against him, which is embezzlement, then I am going to declare a mistrial at this point. Because you see, he is not charged with giving her heroin. He's not charged with being in possession of heroin. He is charged with embezzlement, and that's the only thing you can find him guilty of. You have to give me your assurance that the reference that has now been made, you know, it is something that was not brought out improperly necessarily, more prematurely than anything else, if improperly, but I have to be absolutely certain that the reference to heroin will not influence you in determining the issues that are going to be presented to you ultimately in this case. Starting with the first Juror, do I have your assurance?
 "(Whereupon, the Jury was polled by the Court, and all stated that the reference to heroin would have no effect on their verdict.)
"THE COURT: Very well. Go ahead.
 "MR. STEPHENS: Judge, at this time, I would officially move for a mistrial.
"THE COURT: I will deny your motion.
"MR. STEPHENS: We except."
The rule covering this has been stated by our Supreme Court in Shadle v. State, 280 Ala. 379, 194 So.2d 538:
 ". . . [I]t is well recognized that the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury's ability to decide the defendant's fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion. . . ."
The able trial judge was very careful, as may be seen, in excluding the statement pertaining to the use of narcotics from the jury, but in addition polled the jury and asked them to disregard such testimony entirely. Each juror then indicated that he would obey these instructions. In light of the prompt action of the trial judge, we are of the opinion that no error is here shown. Adair v. State, 51 Ala. App. 651, 288 So.2d 187, and authorities therein cited; Retowsky v. State, Ala.Cr.App.,333 So.2d 193.
The trial judge, in the instant case, was very careful throughout the trial of this cause to be sure that no evidence was admitted or presented against the appellant except with reference to the embezzlement charge. It would unduly burden this opinion to set forth the several conferences which took place between the attorneys and the trial judge with respect to certain evidence which was to be tendered. We commend the trial judge on the manner in which he handled this cause to see to it that prejudicial matter did not go before the jury.
We have carefully examined the record, as required by law, and find same to be free *Page 67 
from error. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.
[1] The State's entire case is based upon the premise of a conspiracy involving the appellant, Napier, and Miss DeVine. See Stokley v. State, 254 Ala. 534, 49 So.2d 284.